## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.

CHRISTOPHER LEGG, an individual, on
behalf of himself and all others similarly situated,

     Plaintiff,

v.                            **COMPLAINT - CLASS ACTION**

VOICE MEDIA GROUP, INC.,
a Colorado Corporation,

     Defendant.

_____/

### CLASS ACTION COMPLAINT FOR STATUTORY DAMAGES AND INJUNCTIVE RELIEF UNDER 47 U.S.C. § 227 *et seq.*, THE TELEPHONE CONSUMER PROTECTION ACT
### JURY DEMAND

1.    "Consumer complaints about abuses of telephone technology – for example, computerized calls to private homes – prompted Congress to pass the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740 (January 18, 2012) (internal citations omitted).  In an effort to enforce this fundamental federal right to privacy, Plaintiff files the instant class action complaint alleging violations of 47 U.S.C § 227 *et seq.*, the Telephone Consumer Protection Act ("TCPA").

2.      In brief, Defendant has sent out thousands of unlawful text messages in violation of the TCPA. By effectuating these unauthorized text message calls (also known as "SMS Messages"), Defendant has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies mobile spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such spam and such messages diminish cellular battery life, waste data storage capacity, and are an intrusion upon seclusion.

3.      In order to redress these injuries, Plaintiff, on behalf of himself and the proposed class of similarly situated individuals, brings this suit under the TCPA, which specifically prohibits unsolicited voice and text calls to cell phones. Defendant has sent unwanted text messages in a manner which violates the right of privacy of the putative class members.  On behalf of the class, Plaintiff seeks an injunction requiring Defendant to cease all unlawful text messages and an award of statutory damages to the class members, together with costs and reasonable attorney's fees.  All allegations contained herein are based upon information and belief of Plaintiff or the investigative efforts of the undersigned counsel.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this class action lawsuit under 28 U.S.C. § 1331 and 47 U.S.C. § 227.   Venue in this District is proper because Plaintiff resides here and Defendant regularly sends text messages to individuals residing within this District.

## PARTIES

5.     Plaintiff, CHRISTOPHER LEGG (hereinafter, "Plaintiff" or "Mr. Legg"), is a natural person, and citizen of the State of Florida, residing in Broward County, Florida.

6.     Defendant, VOICE MEDIA GROUP, LLC (hereinafter, "VMG" or "Defendant"), is a Colorado Corporation, headquartered in Denver, Colorado, which "own[s] and operate[s] the following print publications and corresponding digital properties: Village Voice (New York), LA Weekly (Los Angeles), Westword (Denver), New Times (Phoenix), Houston Press, Dallas Observer, Riverfront Times (St. Louis), New Times (Miami), City Pages (Minneapolis), New Times (Broward), SF Weekly (San Francisco), Seattle Weekly, and OC Weekly (Orange County)." [1] VMG sells "national advertising for more than 56 partner sites and publications, reaching more than 3 million readers across 56 key metro

---

[1] Source:  http://www.prnewswire.com/news-releases/newly-formed-denver-holding-company-voice-media-group-to-acquire-village-voice-media-publishing-properties-170926531.html (last accessed on September 17, 2013).

markets each week."[2] VMG reaches "more than seven million monthly readers in print and 16 million unique desktop visitors each month, in addition to 1.2 million email subscribers, [and] more than 5.7 million visits on mobile…"[3] VMG was formed in 2012 when it purchased the assets of Village Voice Media Holdings, LLC.[4]

### A BRIEF OVERVIEW OF TEXT MESSAGING

7.     In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

8.     One of the newest types of such bulk marketing is to advertise through Short Message Services.  The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120 - 500 characters.

9.     An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device.  When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

---

[2] Id.
[3] Source: http://www.voicemediagroup.com/press/releases/2012-09-24/ (last accessed on September 17, 2013).
[4] *See supra* note 1.

10.     Unlike   more   conventional   advertisements,   SMS   calls,   and particularly wireless or mobile spam, can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

11.     Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six digit extensions, that can be used to address SMS messages to mobile phones.  Short codes are generally easier to remember and are utilized by consumers to subscribe to such services such as television program voting or more benevolent uses, such as making charitable donations.

12.     A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

13.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls

5

whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

14.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute. *See FCC Declaratory Ruling*, 23 FCC Rcd at 565 (¶ 10).

15.     Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

16.     The FCC specifically ruled that a consumer's prior express consent to receive future text messages may be revoked. *In re SoundBite Communications, Inc.*, --- FCC Rcd. ----, No. 02-278, 2012 WL 5986338 (Nov. 29, 2012).

17.     Many companies have websites which promote recurring "alert" programs in which text messages are sent *en masse* automatically to persons within a subscribed database. A consumer specifies the content which he or she wishes to receive within the parameters set by either the consumer or the content provider.

18.     One of the leading think tanks, Pew Research Center, recently reported that 79% percent of cellular telephone owners use text messaging; of this group, 69% percent receive unwanted text message spam, 25% percent on a

weekly basis.   Source:   http://pewinternet.org/Reports/2012/Mobile-phone-problems/Main-findings.aspx (last accessed August 10, 2013).

## FACTUAL ALLEGATIONS SPECIFIC TO MR. LEGG

19.   Defendant operates and promotes several text alert services, which utilize the short code 61721. *See* **Exhibit A** attached hereto.[5]

20.   On or about April 30. 2012, Plaintiff subscribed to receive text message alerts from Defendant by texting the phrase "BROCLUB" to the Defendant's short code of 61721.

21.   Plaintiff then received a confirmatory text message that stated:

> BPB:Welcome to
> New Times Club
> Alerts. You will
> Receive Club offers +
> Specials 2x/wk.
> Reply STOP
> BROCLUB to cancel,
> Reply HELP for help.
> Msg&Data Rates
> May Apply

22.   On or about January 6, 2013, Plaintiff again subscribed to receive text message alerts from the Defendant by texting the phrase "MIAMUSIC" to the Defendant's short code of 61721.

23.   Plaintiff then received a confirmatory text message that stated:

---

[5]   Source:   http://www.miaminewtimes.com/promotions/mobileApps/#mobapp_MobileText   (last   accessed   on September 19, 2013).

> MNT:Welcome to
> New Times Music
> Alerts. Receive our
> Music offers +
> Specials 2x/week.
> Reply STOP
> MIAMUSIC to cancel,
> Reply STOP
> MIAMUSIC to cancel,
> Reply HELP for help.
> MSG&Data Rates
> May Apply.

24.     On or about January 9, 2013, Plaintiff again subscribed to receive text message alerts from the Defendant by texting the phrase "BROFOOD" to the Defendant's short code of 61721.

25.     Plaintiff then received a confirmatory text message that stated:

> BPB:Gives you the
> Scoop on special
> offers, information
> and discounts for
> local eats 4x/wk.
> Reply STOP
> BROFOOD to cancel,
> HELP for help.
> Msg&Data Rates
> May Apply

26.     On or about July 6, 2013, after receiving text message alerts from Defendant for approximately a year, Plaintiff had second thoughts about his

subscription and texted the word "STOP" to short code 61721 whereupon he received a text message from Defendant:[6]

> Reply STOP followed
> By one of the words
> Below:
> ALL
> MIAMUSIC
> BROCLUB
> BROFOOD

27.     Following Defendant's instructions, Plaintiff sent the phrase "Stop all" to defendant's short code in an effort to opt-out of the program but received the same aforementioned message. Plaintiff then sent the phrase "STOP ALL" and received the same message as above.

28.     Plaintiff continued to receive text messages from Defendant in violation of the Telephone Consumer Protection Act on the following dates:

> July 11, 2013
> July 16, 2013
> July 17, 2013

29.     In a final attempt to opt- out of the program, Plaintiff sent the phrase "STOPALL" to Defendant's short code. Immediately after sending the text Plaintiff again received the following message from Defendant:

> Reply STOP followed
> By one of the words

---

[6] Plaintiff does not allege that the confirmatory opt-out text message was in any way unlawful – only the subsequent text message(s) sent by Defendant thereafter.

Below:
ALL
MIAMUSIC
BROCLUB
BROFOOD

30.     Subsequent to trying to opt- out Defendant sent Plaintiff text alerts in

violation of the Telephone Consumer Protection Act on the following dates:

July 18, 2013
July 24, 2013
July 26, 2013
August 1, 2013
August 15, 2013
August 15, 2013
August 15, 2013
August 16, 2013
August 20, 2013
August 30, 2013
August 30, 2013
September 4, 2013
September 11, 2013
September 13, 2013
September 17, 2013
September 17, 2013
September 18, 2013
September 19, 2013
September 19, 2013

31.     According to at least two different websites, there have been many

similar complaints regarding the Defendant's text message alert service. *See*

**Exhibit B** attached hereto. In sum, Defendant's text message alert service is

defective as it does not permit subscribers to opt-out of same.

32.     Given Defendant's extensive use of digital media, millions of weekly readers, and defective text message alert service, there are likely thousands of putative class members as further described herein. Moreover, taking into consideration Defendant's presence in more than fifty major metropolitan areas, there is no practical way to send the above-described text message alerts without the of an automatic telephone dialing system.

33.     Upon information and belief, all members of the putative class received messages which were sent *en masse* using an automatic telephone dialing system, also known as an "auto-dialer"; the device used by Defendant to send the aforesaid text messages had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers or would otherwise qualify as a "predictive dialer."

## CLASS ACTION ALLEGATIONS

34.     This action is brought on behalf of a class consisting of:

All persons in the United States who unsubscribed to receive text messages from Defendant from short code 61721 and were subsequently sent text message advertisements from Defendant (or any party on behalf of Defendant) to their cellular telephone wherein said text messages were sent using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator during the four year period prior to the filing of the complaint in this action through the date of certification.[7]

---

[7] The members of the putative class may be referred to herein as simply "the Class."

35.     Excluded from the Class are Defendant, their legal representatives, assigns, and successors, and any entity in which the Defendant has a controlling interest.  Also excluded from the Class is the Judge to whom this case is assigned, the Judge's immediate family, and Plaintiff's counsel and its employees.  Plaintiff reserves the right to amend the above-stated Class definition based upon facts learned in discovery.

36.     Plaintiff alleges on information and belief based upon the Defendant's use of mass text messages that the class is so numerous that joinder of all members of the class is impractical.  There are more than forty-one (41) individuals in the Class as previously defined herein.

37.     There are questions of law or fact common to the class, which common issues predominate over any issues involving only individual class members.  The common factual and/or legal issues common to each class member are as follows:

(a)     Whether Defendant's conduct is governed by the TCPA?

(b)     Whether the text message advertisements sent by Defendant after Plaintiff unsubscribed violated the TCPA?

(c)     Are the class members entitled to treble damages based upon the willfulness of Defendant's conduct?

(d)     Whether Defendant should be enjoined from engaging in such

conduct in the future?

38.     Plaintiff's claim is typical of those of the class members.  All claims are based on the same facts and legal theories.

39.     Plaintiff will fairly and adequately protect the interests of the class. He has retained counsel experienced in handling actions involving unlawful practices under the TCPA and class actions.  Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

40.     Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

(1)     The questions of law or fact common to the members of the class predominate over any questions affecting an individual member.

(2)     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

41.     Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Defendant has acted on grounds generally applicable to the class thereby making appropriate relief with respect to the class as a whole.

42.     Mr. Legg requests certification of a hybrid class under Rule 23(b)(3), Federal Rules of Civil Procedure, for monetary damages and pursuant to Rule 23(b)(2) for injunctive relief.

**COUNT I**
**NEGLIGENT VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**

43.     Plaintiff incorporates Paragraphs 1 through 42.

44.     Defendant sent unwanted text messages to Plaintiff and the members of the putative class using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator.

45.     The excessive calls (i.e. text messages sent post-revocation) were made without the prior express consent of the parties.

46.     The aforesaid calls were made in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class, and against Defendant for:

(a)     An order certifying this case to proceed as a class action;

(b)     Statutory damages at $500 dollars per call for negligent violations of the TCPA;

14

(c)     An injunction requiring Defendant to cease all communications in violation of the TCPA;

(d)     Reasonable attorney's fees and costs; and

(e)     Such further relief as this Court may deem appropriate.

## COUNT II
## WILLFUL VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT

47.     Plaintiff incorporates Paragraphs 1 through 42.

48.     Defendant sent unwanted text messages to Plaintiff and the members of the putative class using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator.

49.     The excessive calls (i.e. text messages sent post-revocation) were made without the prior express consent of the parties.

50.     The aforesaid calls were made in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class, and against Defendant for:

(a)     An order certifying this case to proceed as a class action;

(b)   Statutory damages of up to $1500 dollars per call for each willful violation of the TCPA;

(c)   An injunction requiring Defendant to cease all communications in violation of the TCPA;

(d)   Reasonable attorney's fees and costs; and

(e)   Such further relief as this Court may deem appropriate.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated this 20th day of September, 2013.


Respectfully submitted,

By:/s/ *Scott D. Owens*
Scott D. Owens, Esq.
*Attorney for Plaintiff*
Florida Bar No. 0597651

SCOTT D. OWENS, P.A.
664 E. Hallandale Beach Blvd.
Hallandale Beach, Florida 33009
Telephone: 954-589-0588
Facsimile: 954-337-0666
scott@scottdowens.com