UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-62044-CIV-COHN/SELTZER

CHRISTOPHER LEGG,
on behalf of himself and
all others similarly situated,

    Plaintiff,

vs.

VOICE MEDIA GROUP, INC.,

    Defendant.

_____/

### DEFENDANT'S MOTION TO EXCLUDE
### THE EXPERT WITNESS TESTIMONY OF RANDALL SNYDER

Defendant Voice Media Group ("VMG") moves for the entry of an Order excluding the testimony of Plaintiff's putative expert witness, Randall Snyder. The grounds for this Motion are:

### I.  INTRODUCTION

**A.  The Nature Of Plaintiff's Claims.**

Plaintiff subscribed to receive on his cellular telephone text message alerts "from" VMG (Complaint [ECF 1], ¶¶20, 22, 24). In actuality, and as Plaintiff has admitted elsewhere, the messages were sent by third-party Phaz2, Inc. ("Phaz2") (ECF 52, p.8; ECF 53, ¶3). The text message alerts give recipients information regarding happenings in Miami-Dade and Broward County. For example, and as illustrated in the Complaint, Plaintiff subscribed to receive text messages from multiple programs/campaigns relating to the club (BROCLUB), music (MIAMUSIC), and food (BROFOOD) scenes (*Id.*, ¶¶21, 23, 25).

Plaintiff alleges that, one year after subscribing, he decided that he no longer wanted to receive the text messages so he texted the word "STOP" to the sender of the text messages (*Id.*, ¶26). He alleges he then received a text message asking him to identify whether he wanted to stop receiving messages from all of the programs, which he could do by requesting to STOP ALL; or whether he wanted to stop receiving messages from specific programs, which he could do by requesting to STOP MIAMUSIC, STOP BROCLUB, and/or STOP BROFOOD (*Id.*).[1] Plaintiff alleges that he responded that he wanted to STOP ALL[2] (*Id.*, ¶¶27, 29). Plaintiff alleges that despite having requested to STOP ALL on July 6, 2013, he continued to receive text messages until September 19, 2013 (*Id.*, ¶¶28-30).

Based on those allegations, Plaintiff's two-count Complaint purports to state claims for violations of 47 U.S.C. §227(b)(1)(A)(iii), which is part of the Telephone Consumer Protection Act (the "TCPA"). That section provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States - -
>
> > (A)   to make any call (other than a call made or emergency purposes or with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice - -
> >
> > \*      \*      \*
> >
> > (iii)   to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

---

[1] Plaintiff concedes that because he subscribed to multiple programs, it was appropriate for Phaz2 to send him a text message asking him to specify the programs from which he wanted to opt-out, including an option to STOP ALL [ECF 52-1, ¶13(1); Compl., ¶26 n.6].

[2] As used in this Motion, STOP ALL will include those words without regard to case or whether there is a space between them.

Each count of the complaint seeks money damages and injunctive relief for violations of that section, with Count I premised upon alleged negligent violations, and Count II premised upon alleged willful violations.

Plaintiff also has filed a motion [ECF 52] seeking to certify the following class:

> All cellular telephone subscribers in the United States who unsubscribed to receive text messages from Defendant from short code 61721 (by texting the word(s) "Stop", "Stop All", or "StopAll" at the beginning of their message) and were subsequently sent text message advertisements from Defendant (or Phaz2, Inc. on behalf of Defendant) to their cellular telephone contrary to their instructions wherein said text messages were sent using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator during the four year period prior to the filing of the complaint in this action through the date of certification.

**B.     The Proffered Expert Witness Testimony.**

Plaintiff has submitted an initial, supplemental, a second supplemental declaration from Randall Snyder, whom Plaintiff holds out as an expert witness. The initial declaration [ECF 52-1] was filed as an exhibit in support of Plaintiff's motion for class certification. A copy of the initial declaration also is attached to this Motion as Exhibit 1 ("Snyder Decl."). The supplemental declaration apparently was intended to be the expert witness report required by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. A copy of the supplemental declaration is attached as Exhibit 2 ("Snyder Supp. Decl."). The second supplemental declaration is attached as Exhibit 3 ("Snyder 2d. Supp. Decl."). The purported expert witness opinions set out in each should be excluded.

## II. ARGUMENT

A. **The Testimony In The Initial And Second Supplemental Declarations Regarding The Number Of Class Members Should Be Excluded.**

In his initial declaration, Mr. Snyder proposes to provide expert witness testimony regarding the number of people who are members of Plaintiff's proposed class because they sent a text message to Phaz2 requesting to STOP ALL or STOP,[3] but nonetheless continued to receive text messages. Mr. Snyder's proposed testimony is premised upon his "analysis" of a spreadsheet that was produced to Plaintiff by Phaz2 (Snyder Decl., ¶17). That spreadsheet, a sample of which is attached as Exhibit 4, is named "MO Messages Containing STOP 030413-072213 with numbers xlsx" (*Id.*).[4] As Mr. Snyder says, that spreadsheet lists all of the messages that people sent to Phaz 2 between March 4 and July 22, 2013 containing the words STOP ALL or STOP in the body of the message (*Id.*).

Mr. Snyder says that he looked at the spreadsheet and, using standard and simple commands to sort or "filter" a spreadsheet, determined that there were 1,846 text messages containing the words STOP ALL, which were sent by 1,026 unique telephone numbers (*Id.*, ¶¶20-23). He reasoned that because 1,026 unique telephone numbers sent 1,846 STOP ALL messages, some of those unique telephone numbers sent more than one STOP ALL message (*Id.*, ¶¶24-25). Mr. Snyder "concludes" in his declaration (but not at his deposition; more on that below) that if a unique telephone number sent more than one STOP ALL message, then it must

---

[3] If someone was subscribed to a single program, then he or she could unsubscribe from that program merely by texting STOP (Snyder Decl., ¶12). If someone was subscribed to multiple programs, and wanted to unsubscribe from some, but not all, of the programs, then he or she could send STOP requests that are specific to the individual programs, such as STOP BROFOOD, STOP BROCLUB, and/or STOP MIAMUSIC (*Id.*, ¶13(1)).

[4] Due to privacy issues, the last four digits of the telephone numbers were redacted before filing.

4

mean that the subscriber did so because he or she continued to receive unwanted text messages (*Id.*, ¶28).

Similarly, Mr. Snyder says that, in the same manner, he saw that an additional 10,584 unique telephone numbers sent Phaz2 at least one text message containing the word STOP (*Id.*, ¶¶26-27). He looked at the spreadsheet and saw that some of those unique telephone numbers sent multiple STOP messages (*Id.*). He concludes in his declaration (but, notably, not at his deposition) that if a unique telephone number sent more than one STOP message, then it must mean that the subscriber did so because he or she continued to receive unwanted text messages (*Id.*, ¶28).

Finally, in his second supplemental declaration, Mr. Snyder says that he did the same thing in connection with additional spreadsheets that covered additional periods of time, and saw that 38,172 unique telephone numbers sent 77,359 STOP ALL requests (Snyder 2d Supp. Decl., ¶¶11-13, 24).

There are two reasons that Mr. Snyder's proposed testimony must be excluded.

First, Mr. Snyder's "analysis" of the spreadsheets did not involve the application of any "scientific, technical, or other specialized knowledge," *see* Fed. R. Evid. 702(a), regarding "telecommunications network and systems architecture, engineering, design and technology" (Snyder Decl., ¶4). Instead, he did what any lay person or average juror could do for himself or herself: he read and sorted a spreadsheet, counted the number of messages containing the words STOP ALL and STOP, and counted the number of unique telephone numbers from which those messages were sent (Deposition of Randall A. Snyder (Exhibit 5), pp. 23-27).

That is *not* admissible expert witness testimony. *See, e.g., In re: Pempro Products Liability Litigation*, 554 F.Supp.2d 871, 887 (E.D. Ark. 2008) *reversed on other grounds* 586

5

F.3d 547 (8th Cir. 2009) ("Having an expert witness simply summarize a document (which is just as easily summarized by a jury) with a tilt favoring a litigant, without more, does not amount to expert testimony.  Because Dr. Parisian's testimony—or reading—invaded areas that required no expert assistance, it was inappropriate 'expert' testimony.") (parenthetical in original); *In re: Pempro Products Liability Litigation*, 586 F.3d at 571 ("The record reflects that often Dr. Parisian simply read the contents of exhibits, thus undermining the asserted basis for expert testimony. . . .  Accordingly, we cannot say that the district court abused its discretion in striking Dr. Parisian's testimony."); *In re: Trasylol Products Liability Litigation*, 709 F.Supp.2d 1323, 1339 (S.D. Fla. 2010) (citing *Pempro*, 554 F.Supp.2d at 880-87) (excluding expert witness testimony); *Hines v. Wyeth*, 2011 WL 2680842 at *7 (S.D.W.V. July 8, 2011) (quoting *Pempro*, 554 F.Supp.2d at 887) (same); *United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004) ("The final requirement for admissibility of expert testimony under Rule 702 is that it assist the trier of fact.  By this requirement, expert testimony is admissible *if* it concerns matters that are beyond the understanding of the average lay person.") (emphasis added); *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994) ("A district court may commit manifest error by admitting expert testimony where . . . the subject matter of the expert's testimony is not beyond the ken of the average juror."); *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008) ("Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own."); *United States v. Montas*, 41 F.3d 775, 783 (1st Cir. 1994) (quoting Fed.R.Evid. 702 advisory committee's note) ("'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue

without enlightenment from those having a specialized understanding of the subject involved in the dispute.'").

Second, Mr. Snyder's "conclusion" – that if a person sent multiple STOP ALL requests, then it must mean that he or she continued to receive text messages – must be excluded because it is nothing more than conjecture and speculation. *See, e.g., Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 591 n.13 (1993)) ("*Daubert* requires that trial courts act as 'gatekeepers' to ensure that speculative, unreliable expert testimony does not reach the jury."). Mr. Snyder admitted at his deposition that there could be a "variety" and "several possible reasons" that someone might have sent multiple STOP ALL or STOP requests, an individual would need to be asked why he/she sent multiple requests to unsubscribe, and he does not know whether anyone who sent multiple requests to unsubscribe actually received a text message after requesting to unsubscribe (Snyder Depo., pp. 22-23, 27-30).

Not only does this speculation violate Rules 702(b) and (c) – which require expert witness testimony to be based on sufficient facts or data, and the product of reliable principles and methods – but Mr. Snyder's speculation cannot bridge the humongous gap between (a) data showing that some individuals sent multiple STOP ALL or STOP requests, and (b) an opinion that if an individual sent multiple requests to unsubscribe, then the individual did so because he/she continued to receive unwanted text messages. *See, e.g., General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court

7

may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

There is one additional aspect of Mr. Snyder's second supplemental declaration that should be briefly addressed.  Mr. Snyder says that a "rigorous analysis" *could* be performed using an algorithm and, according to Mr. Snyder, the results would indicate whether someone received a text message after requesting to STOP ALL (Snyder 2d Supp. Decl., ¶¶14-23, 34). Mr. Snyder confirmed at his deposition that he did ***not*** perform such an analysis (Snyder Depo., pp. 17-18).  There can be no dispute that testimony regarding an analysis that could have been performed, but that was not performed, is inadmissible because it will not "assist the trier of fact."  *See, e.g., Frazier*, 387 F.3d at 1262-63 (11th Cir. 2004).

Mr. Snyder's proposed expert witness testimony, as set out in his initial and second supplemental declarations, must be excluded.

**B.    Mr. Snyder's Opinions Regarding The Requirements Of Domestic Law, And His Application Of Law To The Facts, Must Be Excluded.**

As relevant here, 47 U.S.C. §227(b)(1)(A)(iii) requires the recipient to have received a text message that was made using an "automatic telephone dialing system" ("ATDS").  An ATDS, in turn, is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  *See* 47 U.S.C. §227(a)(1).  Throughout his supplemental and second supplemental declarations, and at various points in his deposition, Mr. Snyder provides his interpretations of the requirements of the TCPA and various rulings and regulations issued by the Federal Communications Commission construing the TCPA, and he applies his interpretation of that domestic law to the "facts" to opine that the text messages at issue here were sent using an ATDS, as defined in the TCPA and construed by the FCC (Snyder Supp. Decl., ¶¶8-9, 27-31;

8

Snyder 2d Supp. Decl., ¶¶27, 32; Snyder Depo., p. 47, l.19 – p. 48, l. 2; p. 74, l. 14 – 21; p. 80, l. 16 – p. 81, l. 1).

His opinions in this regard should be excluded because "[f]ederal courts consistently exclude expert testimony intended to inform jurors about the applicable law or to present opinions concerning the application of the law to the facts of a given case." *See In re: Rosenberg*, 2012 WL 3870351 at *1 (Bankr. S.D. Fla. Sept. 6, 2012) (collecting decisions); *see also Smith v. Microsoft Corp.*, 2013 WL 6497073 at *5 (S.D. Cal. Dec. 10, 2013) ("It is uncontested that Snyder is unqualified to analyze [legal authorities] and state a legal conclusion by applying the facts of this case to his interpretation of the law.");[5] *United States v. Oliveros*, 275 F.3d 1299, 1306-07 (11th Cir. 2001) ("Domestic law is properly considered and determined by the court whose function it is to instruct the jury on the law; domestic law is not to be presented through testimony and argued to the jury as a question of fact."); *Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law."); *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)

> Generally, the use of expert testimony is not permitted if it will usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it. When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's. When this occurs, the expert acts outside his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determination. In evaluating the admissibility of expert testimony, this Court requires the exclusion of testimony which states a legal conclusion. (internal citations and quotation marks omitted).

---

[5] VMG has no objection to Mr. Snyder's reference to the fact that his name and one of his prior reports were cited in a decision from the Ninth Circuit (Snyder Supp. Decl., ¶29), but the fact he was cited in a court decision is not relevant to any of the issues in this case.

Mr. Snyder is neither judge nor jury, and his proposed testimony – which invades the exclusive province of each – should be excluded.

**C. The Testimony In The Supplemental And Second Supplemental Declarations Regarding The Use Of An ATDS Should Be Excluded.**

Even it were permissible for Mr. Snyder to testify regarding his interpretation of the law, and to apply that interpretation to the "facts" of this case to say that the equipment used here is an ATDS, his testimony would still have to be excluded. Through no fault of Mr. Snyder's, Plaintiff's counsel did not provide him with the underlying facts and data that were necessary for him to render such an opinion and, as such, his proposed testimony must be excluded because it is not "based upon sufficient facts or data." *See also McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002) (quoting Rule 702); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1240 (11th Cir. 2005) (excluding expert testimony because, "[i]n short, O'Donnell does not support his opinions with sufficient data . . . as identified by the *Daubert* rubric").

More specifically, Plaintiff's counsel did not depose anyone from VMG, Phaz2, or the aggregator (Mr. Snyder was unsure whether there even was an aggregator),[6] and did not serve a request under Rule 34(a)(2) to inspect any of those entities' equipment. This means that Mr. Snyder is proposing to render an opinion regarding those entities' respective equipment and how it actually was (or was not) used here:

- *without* having inspected a single piece of any of those entities' equipment;

- *without* having reviewed any testimony from anyone at any of those entities regarding how their equipment was actually used, if at all, in connection with the text messages and messaging services at issue here; and

---

[6] Stated generally, an aggregator is an entity that directly connects to wireless carries networks, such as AT&T, Verizon, etc., and then resells that connectivity to others.

10

- *without* having reviewed any testimony from anyone at any of those entities regarding what role, if any, each actually played in the text messages and messaging services at issue here (Snyder Depo., pp. 44-46, 54-55, 74-81).

This leaves Mr. Snyder with attempting to opine regarding the specific circumstances at issue here on the basis of nothing more than his review of a twenty-four page "New Client Handbook" (Snyder Supp. Decl., ¶¶3 (l. 18-19), 23-24, Ex. B[7]) and his general experience in the industry (*Id.*, ¶32).  Neither is sufficient.

With respect to the former, simply reviewing Phaz2's general handbook does not provide the sufficient data.  To begin with, nothing in Phaz2's general handbook mentions whether Phaz2 has equipment that has the capacity to store or produce numbers to be called, using a random or sequential number generator, and to dial such numbers.  Indeed, the part of the handbook entitled "Technical Description" about Phaz2's technology is silent on any such equipment.  *See* P0971-P0973.  Further, as Mr. Snyder admitted at his deposition, "many companies like Phaz2 make lots of exceptions for lots of companies," and he admittedly does not know how things actually worked in connection with the text messages and messaging services at issue here (Snyder Depo., pp. 54-55).

With respect to the latter, Mr. Snyder's general experience in the industry is not a substitute for experience with and knowledge of the *specific* equipment and circumstances at issue here.  *See, e.g., Frazier*, 387 F.3d at 1261 ("Of course, the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express. . . .  If

---

[7] The handbook is Exhibit B to Mr. Snyder's supplemental declaration, and is labeled P950 through 973.

admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong.").

Mr. Snyder's proposed testimony regarding the equipment that was used to send the text messages at issue here must be excluded because it is not based on sufficient facts or data. *See McClain*, 401 F.3d at 1240; *See, e.g., Navarro v. Fuji Heavy Industries, Ltd.*, 117 F.3d 1027, 1031 (7th Cir. 1997) (citing *Daubert*, 509 U.S. at 590) ("The [expert's] affidavit contains no support for this conclusion, and a conclusion without any support is not one based on expert knowledge and entitled to the dignity of evidence."); *Glastetter v. Novartis Pharmaceuticals Corp.*, 252 F.3d 986, 988-89 (8th Cir. 2001) (quoting *Daubert*, 509 U.S. at 590) ("An expert opinion 'must be supported by appropriate validation-i.e., 'good grounds' based on what is known.' In sum, the district court's gatekeeping role separates expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge."); *Irvine, IRG v. Murad Skin Research Laboratories, Inc.*, 194 F.3d 313, 321 (1st Cir. 1999) ("Absent adequate factual data to support the expert's conclusions his testimony was unreliable."); *Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002) (expert witness opinion excluded due to lack of testing and factual development).

In apparent recognition of that problem, and in an attempt to manufacture some sort of experience with the actual equipment at issue here, Mr. Snyder says in his second supplemental declaration that using two telephones, he simultaneously subscribed to a single program (BROCLUB) and each phone received a confirming text message within one or two seconds of each other (Snyder 2d Supp. Decl., ¶28). Mr. Snyder says that when he looks at specific spreadsheets showing messages that were sent by Phaz2, he sees that 195 messages were sent in sixteen seconds (*Id.*, ¶¶29-30). Then, he concludes that "[s]ince these identical text messages

were sent to cellular subscribers in such rapid succession, they must have been created and sent from an automated system.  Furthermore, it is both infeasible and implausible that one or more humans would be employed to manually send these text messages" (*Id.*, ¶31).

The problem for Plaintiff is that Mr. Snyder's appeal to common sense – that so many messages could not have been sent in so little without an automated system – is exactly what makes his testimony inadmissible.  Plaintiff is free to have a fact witness testify regarding how many messages were sent during specific intervals, and his counsel is free to argue to the jury that common sense demands an inference that so many messages could have been sent so quickly only if an automated system were used.   Plaintiff may not, however, use an expert to offer testify about something that is within the common sense understanding of a juror.  *See, e.g., Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.*, 2008 WL 125601 at *2 (S.D. Fla. Jan. 7, 2008) ("Mr. Bouchner's 'common sense' conclusions regarding Plaintiffs' damages calculations do not qualify as admissible expert testimony under Fed.R.Evid. 702."); *Frazier*, 387 F.3d at 1262-63 ("The final requirement for admissibility of expert testimony under Rule 702 is that it assist the trier of fact.  By this requirement, expert testimony is admissible *if* it concerns matters that are beyond the understanding of the average lay person.") (emphasis added); *United States v. Montas*, 41 F.3d 775, 784 (2d Cir. 1994) ("We believe that an average juror can assess intelligently whether an inference of guilt should be drawn from travelling under the name of "P. Felix" without expert testimony that airline drug smugglers check their bags and buy their tickets under false names to avoid detection.").

Mr. Snyder's proposed expert testimony in this regard should be excluded.

**D.      Expert Witness Testimony Cannot Be Used To Parrot And Bolster A Fact Witness's Testimony.**

In his second supplemental declaration, Mr. Snyder says he looked at information relating to Plaintiff's telephone number and has "corroborate[d]" Plaintiff's claim that Plaintiff received twenty-three text messages after he requested to STOP ALL (Snyder 2d Supp. Decl., ¶¶25-26). As Mr. Snyder tacitly concedes by his use of the word "corroborate," Plaintiff has already stated in a declaration that he received twenty-three unwanted text messages [ECF 52-2 (¶¶10-13)]. Additionally, there is no indication that jurors would be unable to understand Plaintiff's testimony that he received twenty-three text messages after asking for the messages to stop.

This means Plaintiff is impermissibly – and overtly – attempting to use Mr. Snyder's "corroborat[ing]" statement to bolster Plaintiff's testimony and version of events. *See, e.g., United States v. Cruz*, 981 F.2d 659, 664 (2d Cir. 1992) (holding subject matter of permissible expert testimony "must have esoteric aspects reasonably perceived as beyond the ken of the jury and that expert testimony cannot be used solely to bolster the credibility of [the proponent's] fact-witnesses by mirroring their version of events"); *United States v. Arthur*, 2011 WL 3844090 at *4 (S.D. Fla. Aug. 29, 2011) ("Dr. Palmetier's report simply parrots Defendant's version of the events . . . with the added mantle of an expert's credentials.  Such testimony would constitute impermissible bolstering of another's witness's testimony.").  Mr. Snyder's testimony in this regard should be excluded.

### III. CONCLUSION

For these reasons, Mr. Snyder's proposed expert witness testimony, as addressed above, should be excluded.

    Respectfully submitted,

    HOLLAND & KNIGHT LLP
    Attorneys for VMG
    701 Brickell Avenue
    Suite 3300
    Miami, Florida 33131
    Telephone: 305-374-8500
    Facsimile: 305-789-7799

    By: /s/  Scott D. Ponce
    Sanford L. Bohrer (FBN 160643)
    sbohrer@hklaw.com
    Scott D. Ponce (FBN 169528)
    sponce@hklaw.com
    Brian W. Toth (FBN 57708)
    brian.toth@hklaw.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of March 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System.

    By:/s/  Scott D. Ponce

#28265847_v1