UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:13-cv-62044-JIC

CHRISTOPHER LEGG, an individual, on
behalf of himself and all others similarly situated,

    Plaintiff,

v.

VOICE MEDIA GROUP, INC.,
a Colorado Corporation,

    Defendant.
_____/

### PLAINTIFF'S MOTION, MEMORANDUM OF LAW, AND STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON BEHALF OF HIMSELF AND THE CLASS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and S.D. Fla. L.R. 7.5, Plaintiff, CHRISTOPHER LEGG, respectfully requests that this Court enter summary judgment in favor of Plaintiff and the Class and rule that, as a matter of law, Defendant, VOICE MEDIA GROUP, INC. ("Defendant"), has violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and that there are no genuine issues of material fact relative to any defense to the aforesaid violations of the TCPA. In support of this Motion, Plaintiff submits the accompanying Memorandum and Statement of Material Facts. As set forth in Plaintiff's Memorandum, Defendant has placed numerous text message calls to Plaintiff and the Class members' cellular telephone using an automatic telephone dialing system, all without even the

remote possibility of Plaintiff's prior express consent.  Consequently, Plaintiff and the Class are entitled to summary judgment as a matter of law.[1]

## I. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).  A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. at 248.  In opposing a summary judgment motion, the "non-moving party must do more than present a mere *scintilla* of evidence in his favor. Rather, the nonmoving party must present sufficient evidence such that 'reasonable jurors could find by a preponderance of the evidence for the non-movant.'" Sylvia Dev. Corp. v. Calvert County Md., 48 F. 3d 810, 818 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 249-50).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id.  In a class

---

[1] Plaintiff respectfully requests that this Court defer ruling on the present motion until a Class has been certified, notice has been provided to the members of the Class, and Class members have had an opportunity to opt-out of this class action if they so desire. *See generally*, Matsushita Elec. Industrial Co. v. Epstein, 516 U.S. 367, 116 S. Ct. 873, 134 L. Ed. 2d 6 (1996) (under Federal Rule of Civil Procedure 23, "[a]ll members of the class, whether of a plaintiff or a defendant class, are bound by the judgment entered in the action unless, in a Rule 23(b)(3) action, they make a timely election for exclusion." 2 H. Newberg, Class Actions § 2755, p. 1224 (1977)).

action context, once a case has been certified, the named plaintiff has standing to prove the claims on behalf of the entire class if he can in fact prevail in his own action. *See generally*, Davis v. Coca–Cola Bottling Co., 516 F.3d 955, 965–67 (11th Cir. 2008).

## II.  ARGUMENT

### A.  INTRODUCTION

This motion involves a simple, narrow legal issue, to wit: whether Defendant sent unwanted, autodialed text messages to Plaintiff and the members of the Class.  Indeed, the TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls. Mims v. Arrow Fin. Servs., LLC, --- U.S. ---, 132 S.Ct. 740, 745 (2012).  The TCPA makes it "unlawful for any person within the United States ... to make a call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic dialing system ... to any telephone number assigned to a ... cellular telephone service ..." 47 U.S.C. § 227(b)(1) (A). The TCPA creates a private right of action for persons affected by violations of its provisions and authorizes an award of $500.00 dollars in statutory damages for each violation and the possibility of treble damages. 47 U.S.C. § 227(b)(3).

In order to prevail on his claim, the Plaintiff must establish that the Defendant placed calls to a number assigned to a cellular telephone service using an automatic dialing system. *See* Breslow v. Wells Fargo Bank, N.A., 857 F.Supp.2d 1316, 1319; Buslepp v. B & B Entertainment, LLC, 2012 WL 4761509, *4 (S.D. Fla. Oct. 5, 2012) (Cohn, J.).  The FCC has explicitly stated that the TCPA's prohibition on automatic telephone dialing systems "encompasses both voice calls and text calls to wireless numbers including, for example, short message service ((SMS) calls ...." *In re Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991,* Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003); *see also,* Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2009) ("a text message is a 'call' within the meaning of the TCPA"); Lozano v. Twentieth Century Fox Film Corp., 702 F.Supp.2d 999, 1006-08 (N.D. Ill. 2010) (same).

Just as the FCC has defined whether a text message is a call and therefore subject to the TCPA, it has also clarified that the device utilized by Defendant falls within the definition of an *automatic telephone dialing system* ("ATDS" or "autodialer") and that prior express consent may be revoked as a matter of law, specifically, in a text message context. These rulings are not subject to judicial review pursuant to the Hobbs Act. Leckler v. Cashcall, Inc., 2008 U.S. Dist. LEXIS 97439, *7-8 (N.D. Cal. 2008); *see also*, Moise v. Credit Control Services, Inc., 950 F.Supp.2d 1251 (S.D. Fla. 2011) (holding that court lacked jurisdiction to determine the validity of FCC Order).

### B. PLAINTIFF AND THE CLASS MEMBERS ALL RECEIVED UNWANTED CALLS ON THEIR *CELLULAR* TELEPHONES.

The present matter only concerns those subscribers who were unsuccessful in their attempt to unsubscribe from Voice Media Group's text message alert service. [ECF No. 1; ¶¶ 2, 3]. It is undisputed that "[a]n "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received." [ECF No. 1; ¶ 9]; [ECF No. 44; ¶ 9]. Furthermore, a residential (landline) phone is not capable of sending a completed text message. [Snyder Dep. at 14:8-10]. In sum, the present matter only concerns cellular (wireless) telephones and removes the possibility that any residential (landline) telephones are encompassed in the Class. This is also relevant because it

negates Defendant's affirmative defense of "established business relationship." [ECF No. 44; ¶ 58 / p. 7]; Himes v. Client Svcs., Inc., --- F.Supp.2d ----, 2014 WL 24258 (D.N.H. 2014) (holding that *unlike the exemptions that apply exclusively to residential lines, there is no established business relationship exemption that applies to autodialed calls made to cellular phones*).

### C. THE TEXT MESSAGE CALLS AT ISSUE WERE PLACED USING AN AUTOMATIC TELEPHONE DIALING SYSTEM.

Plaintiff has alleged that Defendant sent out text messages *en masse* to a subscribed database of cellular telephone numbers using technology similar to that of a specific type of auto-dialer known as a *predictive dialer*. [DE-1; ¶¶ 17, 19]. A "predictive dialer" is considered an ATDS under the TCPA. *In re Rules & Regulations Implementing the Telephone. Consumer Protection Act of 1991,* 18 F.C.C.R. 14014, 14093 (2003). "A predictive dialer is ... hardware, when paired with certain software, [which] has the capacity to store or produce numbers and dial those numbers ... *from a database of numbers.*" *Id.* at 14091 (emphasis added). The FCC has stated that "the basic function of such equipment ... [is] the capacity to dial numbers without human intervention." *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 F.C.C.R. 559, 566 (2008); *see also*, *Hicks v. Client Services, Inc.*, Not Reported in F.Supp.2d, 2008 WL 5479111 (S.D. Fla. 2008) ("This type of device, which calls a set of numbers without human intervention, likely falls under the FCC definition of "automatic telephone dialing systems".) (Dimitrouleas, J.). Although the sophistication of these devices exceeds that of dialing equipment previously used to arbitrarily generate ten-digit numbers, the FCC acknowledged that the "basic function" remained the

same—namely, "the *capacity* to dial [phone] numbers [en masse] without human intervention" or oversight. *2003 Report* at 14092 ¶ 132 (emphasis added).

In evaluating whether a predictive dialer is an ATDS under the TCPA, the FCC focused on Congress's intent to prevent automated phone calls to telephone numbers "for which the consumer is charged for the call," such as cell phones. *2003 Report* at 14092 ¶ 133. Because the purpose of predictive dialers is to do precisely that, the FCC concluded that excluding them from the definition of automatic telephone dialing equipment would be an exception that swallows the rule. *2003 Report* at 14092 ¶ 133. The protected class of phone numbers, including cell phone numbers, would remain vulnerable to relentless harassment by telemarketers by virtue of the hollow distinction that their number was dialed from a list rather than randomly generated. *Id.* Accordingly, the FCC ruled that "a predictive dialer falls within the meaning and statutory definition of 'automated telephone dialing equipment' and the intent of Congress." *2003 Report* at 14093 ¶ 133. In 2008, the FCC issued a Declaratory Ruling reaffirming that "a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling,* 23 F.C.C. Rcd. 559, 556 ¶ 12, 2008 WL 65485 (F.C.C. Jan. 4, 2008). The FCC also noted that it expects "automated dialing technology to continue to develop." *Id.*

In the present matter, the analysis of whether the device utilized to send text messages to Plaintiff and the Class members is straightforward and uncontroverted. Plaintiff has come forward with the testimony of an expert witness, Randall A. Snyder, who has opined that the technology utilized to send SMS messages to the cellular telephones of the Class members constitutes an "automatic telephone dialing system." [Snyder 2nd Supp. Decl. at ¶35:p.14]. In

fact, Plaintiff's expert witness, Randall A. Snyder, details that in one instance the "VMG text messaging program sent 195 mobile-terminated text messages to 195 cellular telephone subscribers within 16 seconds. An average of one message sent every 0.08 seconds." [Snyder 2nd Supp. Decl. at ¶30:p.13]

As Mr. Snyder's expert testimony has not been challenged by any opposing expert from Defendant, Plaintiff is entitled to summary judgment on the issue of whether the technology at issue falls under the definition of *automatic telephone dialing system*.  *See* Fed.R.Evid. 701, 702; *see also,* Webster v. Offshore Food Serv., 434 F.2d 1191, 1193 (5th Cir. 1970) (stating that summary judgment is appropriate when "the trier of fact would not be at liberty to disregard arbitrarily the unequivocal, uncontradicted and unimpeached testimony of an expert witness [whose] testimony bears on technical questions of medical causation beyond the competence of lay determination."); Farooq v. MDRB Corp., 275 Fed.Appx. 11, 12 (D.C. Cir. 2008) (upholding summary judgment where plaintiff failed to designate an opposing expert on the standard of care relating to supervision of security personnel).

Finally, if there were any doubt as to whether the text messages at issue were sent with an autodialer, Phaz2, Inc. produced the following SMS message in response to Plaintiff's discovery, admitting that it autodials the text messages that are the subject of this litigation:



### D. DEFENDANT IS LIABLE EVEN IF THE CALLS AT ISSUE WERE PLACED BY PHAZ2 ON DEFENDANT'S BEHALF.

It is undisputed that Phaz2, Inc. operated the text messaging platform utilized and promoted by Voice Media Group, Inc. Hence, in order to prove liability on behalf or Defendant, Plaintiff must establish that there was a direct relationship between Defendant and Phaz2, Inc. In explaining the nature of this relationship, in 2013, the FCC found a formal relationship was not necessary to establish "on behalf of" liability. A plaintiff could use ratification or apparent authority to establish vicarious liability under a "broad range" of federal common law agency principles. *FCC Declaratory Ruling*, ¶ 1. The FCC went on to illustrate the types of evidence that would support vicarious liability albeit in a telemarketer context (as opposed to a SMS mobile marketing company). To support a theory that a telemarketer is the seller's authorized representative with apparent authority, the following might be considered:

> whether the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: **access to detailed information** regarding the nature and pricing of the seller's products and services to the seller's customer information. The **ability by the outside sales entity to enter consumer information** into the seller's sales or customer system, as well as **the authority to use the seller's trade name**, trademark, and service mark may also be relevant. It may also be persuasive that the seller approved, **wrote** or reviewed the outside entity's telemarketing **scripts**.

(Id. at ¶ 46) (emphasis added). As noted by Judge Keeley of the Northern District of West Virginia, the FCC clarified *on behalf of* liability by stating that, "while a seller does not generally "initiate" calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." Mey v. Monotronics Int'l, Inc., 959 F.Supp.2d 927 (N.D. W.Va. 2013) (internal

quotations omitted). The court further added, "the FCC's conclusion that "on behalf of" liability embraces federal common law principles of agency is quite sensible." (*citing Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules")). This has also been expressed by other courts in the context of text message marketing. *See* Lee v. Stonebridge Life Ins. Co., 289 F.R.D. 292 (N.D. Cal. 2013) ("That third party contractors may have actually carried out the operation is unlikely to be a viable defense for either Trifecta or Stonebridge…).

In the present matter, Defendant has alleged in its Answer and Affirmative Defenses that its mobile marketing company, Phaz2, Inc., is not an automatic telephone dialing system, and that even if it was, Defendant is not liable for the actions of a third party.[2] To begin, courts within this district have already held that companies are liable for the actions of a third party, even when the third party is in physical possession of the technology at issue. Bianchi v. Bronson & Migliaccio, LLP, No. 09-cv-61164-UU, ECF No. 55; ¶¶ 183-85 (S.D. Fla. May 26, 2010). Bianchi involved issues similar to those in this matter, including the defendant's use of a third party's technology, LiveVox, Inc., to place automated calls to the plaintiff. Id. Following the close of evidence at trial, the Honorable Judge Ursula Ungaro ruled as follows:

> MR. DUNCAN:    And, Your Honor, we are not arguing or suggesting that it wasn't an automated, as defined by the TCPA, that it's not automated. It's a predictive automated dialer. My point is and my argument is that for purposes of this agency argument, in other words, who was doing it, that Livevox is doing something on its end and, according to Mr. Cawley's testimony, was responsible for doing something on its end.

---

[2] [ECF No. 44; ¶ 51 / p. 6]

> THE COURT: Well, I don't think it's an agency question. I think it's no different than I have a telephone provided by AT&T and I use it.
>
> MR. DUNCAN: Your Honor, my point is I believe the testimony is otherwise.
>
> THE COURT: I disagree with you. So, I'm finding as a matter of law, based on the evidence, the undisputed evidence presented and the description given by Mr. Cawley in particular, that the Livevox system is an automatic telephone dialing system which is used by the Bronson firm to make calls.

Id. at 183-84. In the end, the Court in Bianchi found liability against the debt collector in the amount of $33,500.00 dollars, even though it was another company, LiveVox, Inc., which placed the violative calls to the plaintiff. Plaintiff maintains that the holding in Bianchi was correct, and the Court should reach the same conclusion in this case.

As explained by Plaintiff's expert witness, Randall A. Snyder, who reviewed the discovery produced by Phaz2, Inc., "based upon my review of the relevant documents provided, I concluded that VMG, in conjunction with Phaz2, Inc. ("Phaz2"), maintains and operates an ATDS which stores telephone numbers to be called, dials those telephone numbers in sequence from a list of numbers and in fact does call those numbers from the list." The documents produced by Phaz2, Inc. include: (1) a contract between VMG and Phaz2, Inc. [ECF No. 65-3] (2) numerous emails from Stacy Volhein, Director of Digital Operations for Voice Media Group, reflecting a business marketing relationship between Voice Media Group, Inc. and Phaz2, Inc. [Exhibit 1]; (3) a document labeled "SMS Program Set-Up" on "Voice Media Group" letterhead [Exhibit 2]; (4) several charts reflecting the numerous text message campaigns operated in conjunction by Defendant and Phaz2, Inc. [Exhibit 3]; (5) multiple "call to action" advertisements reflecting Defendant's use of the 61721 short code [Exhibit 4]; (6) Phaz2, Inc.'s operations manual describing the inner workings of the Phaz2 Stiletto P2™ API (application

program interface) / SMS delivery system, which provides each of Phaz2, Inc.'s clients, including Voice Media Group, Inc., with user log in privileges that grant control over the content, frequency, and recipients of SMS messages. [Exhibit ]; and (7) exemplar text messages which reflect Defendant's name in the body of the subject message [Exhibit 6]. It would be difficult to imagine a more intimate involvement in the delivery of text messages than that between Phaz2, Inc. and Defendant.

Furthermore, perhaps the most compelling evidence that Phaz2, Inc. maintains and operates an ATDS which stores telephone numbers to be called is the sworn statement of their own co-founder and President, Sandra Holmes. Through Ms. Holmes Phaz2, Inc. states that Phaz2's equipment stores telephone numbers in its database and associates that person's telephone number with a particular campaign. *Declaration of Sandra Holmes* (ECF No. 65-5; ¶ 4).

It should also be noted that the company which provided calling services, Phaz2, Inc., as a contracted vendor of Defendant is not a required party under Rule 19.[3] *See FCC Declaratory Ruling*, CG Dkt. No. 11-50, FCC 13-54, ¶ 28 (May 9, 2013) ("a seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification."); Smith v. State Farm Mut. Auto. Ins. Co., 2013 WL 5346430 (N.D. Ill. Sept. 23, 2013) (noting that "[t]he federal common law of agency as described in the 2013 FCC Ruling is in accord with the Restatement."); Savanna Grp., Inc. v. Trynex, Inc., No. 10 C 7995, 2013 WL 4734004 (N.D. Ill. Sept. 3, 2013) (citing 28 F.C.C.R. at 6587; *see also,* Maryland v. Universal Elections, Inc., 787 F. Supp. 2d 408, 417-18 (D. Md. 2011) (concluding that claims against the defendant were independent of any potential claims

---

[3] *See* "Defendant's Answer to Complaint" [ECF No. 44; ¶¶ 51–53 / p. 6].

against the company which provided contractual calling services on the defendant's behalf). Only one circuit court has visited the issue of liability for calls placed by a third party. In Maryland v. Universal Elections, Inc., 729 F.3d 370, 379 (4th Cir. 2013) the court was left to tackle the issue of whether a lawsuit should have been dismissed for the failure to join an indispensable party. The court held, "Robodial.org's absence from the case neither impairs its ability to protect its interest nor leaves the existing parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Id. at 379 (*citing* Fed.R.Civ.P. 19(a)(1)(B)) (internal quotations omitted).

### E. THE AFFIRMATIVE DEFENSE OF PRIOR EXPRESS CONSENT IS NOT PRESENT HERE.

Other than calls made for an emergency purpose, the only defense to a violation of 47 U.S.C. § 227(b)(1)(A)(iii) is *prior express consent*.[4] On November 29, 2012, the FCC issued a declaratory ruling, *In re SoundBite Communications, Inc.*, --- FCC Rcd. ----, No. 02-278, 2012 WL 5986338 (Nov. 29, 2012), in which the FCC clarified that a consumer's prior express consent under 47 U.S.C. §227(b)(1)(A) can be revoked. Specifically recognizing that "neither the text of the TCPA nor its legislative history directly addresses the circumstances under which prior express consent is deemed revoked," the FCC, citing its powers to interpret the TCPA[5],

---

[4] *See* Grant v. Capital Mgmt. Svcs., 449 Fed.Appx. 598, 600 (9th Cir. 2011) ("Calls otherwise in violation of the TCPA are not unlawful if made "for emergency purposes or made with the prior express consent of the called party," 47 U.S.C. § 227(b)(1)(A); however, "express consent" is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof. *See* 23 F.C.C.R. 559, 565 (Jan. 4, 2008) ("[W]e conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent.")).

[5] *See* CE Design, Ltd. v. Prism Business Media, Inc., 606 F.3d 443, 446-50 (7th Cir. 2010) (holding in a TCPA case that the Hobbs Act vests the federal court of appeals with the "exclusive jurisdiction" to review the validity of the FCC's TCPA orders, making the FCC's

held that a consumer can opt-out of "prior express consent" under §227(b)(1)(A), the same section at issue here, to receive auto-dialed text messages on her cell phone. *SoundBite* at ¶¶ 7-8.

The *SoundBite* petition posed the question of whether sending a one-time text message confirming a consumer's request to opt out of autodialed text messages to her cell phone would violate the TCPA. The FCC held it would not. As previously explained, the FCC has explicitly stated that the TCPA's prohibition at 47 U.S.C. § 227(b)(1)(A) – the very section at issue here – "encompasses both voice calls and text calls to wireless numbers." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 (July 3, 2003).

In its petition, SoundBite Communications, Inc. stated it sends text messages on behalf of a number of companies that have obtained express consent to send text messages to particular wireless subscribers. *SoundBite* at ¶ 3. When a consumer sends a text message response "opting-out" of receiving future text messages, SoundBite sends a one-time reply via text message to the consumer to confirm receipt of the opt-out request. *Id.* SoundBite requested clarification from the FCC of whether that "confirmatory" text message violated the TCPA as not being made with the "prior express consent" of the recipient, the consent having been revoked by the called party's opt-out text. The FCC's granted SoundBite's petition, and held that the "one-time text confirming a request that no further text messages be sent does not violate the TCPA or the Commission's rules …" *Id.* at ¶ 7. The FCC stated that "the consumer's prior express consent to receive text messages from an entity can be reasonably construed to include consent to receive a final, one-time text message confirming that such consent is being revoked at the request of that consumer." *Id.* (emphasis added).

The FCC expressly recognized that it was making the determination of "whether 'prior express consent' within the meaning of § 227(b)(1)(A) is revoked when the consumer sends an

---

final rulings interpreting the TCPA *binding* on all other courts, which are limited to determining whether the parties' actions in fact violate the FCC's TCPA rules).

opt-out request" and that "neither the text of the TCPA nor its legislative history directly addresses the circumstances under which prior express consent is deemed revoked." *Id.* at ¶ 8. The FCC's filling of this "statutory gap" through its declaratory ruling is reasonable and entitled to Hobbs Act deference. Citing its powers to interpret "prior express consent," the FCC held that such consent can be revoked and that allowing this one-time confirmatory message after revocation of consent "is consistent with the goals and objectives of the TCPA." *SoundBite* at ¶ 8. Finally, the FCC specifically "acknowledge[d] that consumer consent to receive [autodialed text] messages is not unlimited," considering the TCPA's goal is of "protecting consumers from unwanted autodialed communication." *Id.* at ¶ 11 (emphasis added).

The FCC's ruling in *SoundBite* broadly "ensures that wireless consumers will continue to benefit from the TCPA's protection against unwanted autodialed texts." *SoundBite* at ¶ 1. This protection applies regardless of content – the FCC's ruling covers all autodialed texts, not merely telemarketing texts; and thus all unwanted autodialed calls to cell phones, not merely telemarketing calls. As stated by the FCC, "prior express consent" is "not unlimited", a statement directly contrary to Defendant's position that the "prior express consent" that arises from a consumer having opted in to an automated text message alert service is somehow irrevocable for life. Further, Defendant's position, if accepted, would result in consumers being held in telephonic servitude, rendered completely helpless when badgered by text message advertisements that can ceaselessly run up their costly cell minutes with no consequence.

Significantly, the rationale of the FCC's *SoundBite* decision was recently adopted by the Third Circuit in <u>Gager v. Dell Financial Services, LLC</u>, 727 F.3d 265 (3d Cir. Aug. 22, 2013). In *Gager*, the court was faced with the issue of whether consent is revocable under the TCPA. Ultimately, the court held:

> [ ] we conclude that the absence of an express statutory authorization for revocation of prior express consent in the TCPA's provisions on autodialed calls to cellular phones does not tip the scales in favor of a position that no such right exists. We reach this conclusion for three reasons. First, our understanding of the common law concept of consent shows that it is revocable. Second, in light of the

> TCPA's purpose, any silence in the statute as to the right of revocation should be construed in favor of consumers. Finally, **the FCC's decision in *SoundBite* provides further evidence that we have reached the correct result in this case.**

*Id.* at 270 (emphasis added); *see also*, Munro v. King Broadcasting Co., Slip Copy, 2013 WL 6185233 (W.D. Wash. Nov. 26, 2013) (holding wherein consumer opted in to receive text messages and later texted "stop" to cease the further receipt of same that: "the TCPA allows consumers to revoke consent to receive text messages and allows them to bring a private action under the TCPA if the messages do not stop thereafter."); Murphy v. DCI Biologicals Orlando, LLC, Slip Copy, 2013 WL 6865772, 59 Communications Reg. (P&F) 905 (M.D. Fla. 2013) ("After a careful review of the Hobbs Act and the applicable caselaw, the Court finds that it has no jurisdiction to review final FCC orders…"). Thus, Defendant's affirmative defense of "prior express consent" fails as a matter of law. [ECF No. 44; ¶ 59 / p. 7].[6]

### F. PLAINTIFF AND THE CLASS MEMBERS ARE ENTITLED TO STATUTORY DAMAGES AND INJUNCTIVE RELIEF.

As previously explained, the TCPA provides for injunctive relief[7] as well as (minimum) monetary damages of $500.00 dollars for each violation of the TCPA. 47 U.S.C. § 227(b)(3)(B). Defendant has raised a due process argument with respect to the monetary damages at issue in this class action lawsuit. [ECF No. 44; ¶ 57 / p. 7]. The Supreme Court's opinion in Shady

---

[6] While not even recognized as valid legal defenses to a violation of the TCPA, *In re SoundBite* also negates Defendant's claimed affirmative defenses of "failure to mitigate damages," "estoppel," and "unclean hands." *See supra* note 2; *see also*, Powell v. West Asset Management, Inc., No. 10-cv-7852, 2011 WL 1126040 (N.D. Ill. March 24, 2011) (mitigation of damages is not a defense under the TCPA).

[7] *See generally*, Hines v. CMRE Fin. Svcs., Inc., Slip Copy, 2014 WL 105224, *5 (S.D. Fla. 2014) ("47 U.S.C. § 227(b)(3) provides for minimum statutory damages of $500 for each call in violation of the TCPA, in addition to injunctive relief.") (Cohn, J.).

Grove Orthopedic Associates, P.A., v. Allstate Insurance Company, 130 S. Ct. 1431 (2010), forecloses such an argument. In Shady Grove, the Court considered whether a New York state law prohibiting class actions seeking penalties or statutory minimum damages precludes a federal court from considering Rule 23 class action status. The Court held that a plaintiff may pursue a class action claim seeking such statutory damages so long as he meets the requirements of Rule 23. *See also*, Manno v. Healthcare Revenue Recovery Group, LLC, 289 F.R.D. 674, 591 (S.D. Fla. 2013) (holding in a TCPA class action that "[w]hile Defendants may face a potentially larger liability in a class action, it does not follow that any damages awarded would be disproportionate.") (Scola, J.).

The portion of Justice Scalia's opinion joined by three other justices found it "obvious" that plaintiffs may aggregate multiple claims for statutory damages in a class action. Id. at 1443. Such rules "neither change plaintiffs' separate entitlements to relief nor abridge defendants' rights; they alter only how the claims are processed." Id. Thus, in responding to the defendant's argument that aggregation of statutory penalties improperly transforms a dispute over $500.00 dollars into a suit for $5 million dollars, Justice Scalia noted:

> [A]ggregate liability, however, does not depend on whether the suit proceeds as a class action. Each of the 1,000-plus members of the putative class could (as [the defendant] acknowledges) bring a freestanding suit asserting his individual claim. It is undoubtedly true that some plaintiffs who would not bring individual suits for the relatively small sums involved will choose to join a class action. That has no bearing, however, on [the defendant's] or the plaintiffs' legal rights. The likelihood that some (even many) plaintiffs will be induced to sue by the availability of a class action is just the sort of "incidental effec[t]" we have long held does not violate § 2072(b).

Id. Justice Stevens' concurrence provides a fifth vote for this holding. Id. at 1459 n. 18.[8] Although not framed in terms of "due process," Shady Grove precludes any argument that

---

[8] Responding to Justice Ginsburg's argument that class certification would "transform a $500

aggregation of statutory damages in a class action lawsuit is somehow improper.  The Court explained that Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."  Thus, the Supreme Court's holding dictates that there is no due process concern for aggregating statutory damages for the class.

Courts have rejected similar arguments on this point with respect to the TCPA.  As one court noted, "[t]he Due Process clause does not require Congress to make illegal behavior affordable, particularly for multiple violations."  Centerline Equip. Corp. v. Banner Personnel Serv., Inc., 545 F. Supp. 2d 768, 778 (N.D. Ill. 2008) (denying motion to dismiss TCPA claim).  *See also,* Texas v. American Blastfax, Inc., 121 F. Supp. 2d 1085, 1090 (W.D. Tex. 2000) (noting that the constitutionality of damages under the TCPA must be measured with reference to the "overall public harm" caused by the defendant's conduct, not just by examining individual injuries, and concluding that the remedies provided are not unreasonable); ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., 203 Ariz. 94, 100-101, 50 P.3d 844 (Ariz. 2002) (reversing denial of certification for TCPA claims, stating that Congress drafted the TCPA "to compensate for the actual damages and unquantifiable harm, but also to deter the offensive conduct," and concluding that "[t]he penalty is not so disproportionate to actual damages as to violate due process") (internal citations omitted).

---

case into a $5,000,000 award," Justice Stevens notes:

> [C]lass certification would transform 10,000 $500 cases into one $5,000,000 case.  It may be that without class certification, not all of the potential plaintiffs would bring their cases.  But that is true of any procedural vehicle; without a lower filing fee, a conveniently located courthouse, easy-to-use federal procedural rules, or many other features of the federal courts, many plaintiffs would not sue.

Id. at 1459 n. 18.

In the present case, the records at issue clearly demonstrate that the Class members are entitled to both statutory damages and injunctive relief.  *See* Ira Holtzman, C.P.A., & Assocs. v. Turza, 728 F.3d 682 (7th Cir. 2013) (affirming class wide TCPA judgment awarding 221 class members $500 in statutory damages for each of the 8,430 times defendant successfully sent a fax to any class member, for a total of total of $4,215,000 dollars); Hinman v. M and M Rental Center, Inc., 596 F. Supp. 2d 1152 (N.D. Ill. 2009) (awarding $500.00 dollars per facsimile for a total of $3,862,500 dollars based on the total of 7,725 unsolicited advertisements that defendant sent to the class); G.M. Sign, Inc v. Group C Communications, 2011 U.S. Dist. LEXIS 2929 (N.D. Ill. 2011) (awarding "$500 for each of Group C's 37,932 TCPA violations (i.e., $18,966,000)."); Nicholson v. Hooters of Augusta, Inc., 272 F.Supp.2d 1365, 1368 (S.D. Ga. 2003) (jury awarded $3,000 dollars to all 1,321 class members for six junk faxes; the Court tripled that amount for a total of $11,889,000 dollars).  By way of this motion, Plaintiff waives any claim for willful damages on behalf of himself and the Class.

### III.   CONCLUSION

The Defendant placed telephone calls to Plaintiff and the Class members' cellular telephones using an automatic telephone dialing system and without their prior express consent in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).  Consequently, Plaintiff and the Class members are entitled to summary judgment against the Defendant on all matters, including monetary damages and injunctive relief.

Dated: March 21, 2014

Respectfully submitted,

/s/ Scott D. Owens
SCOTT D. OWENS, ESQ.
Florida Bar No. 0597651
664 E Hallandale Beach Blvd
Hallandale Beach, FL 33009
Telephone: (954) 589-0588
Facsimile: (954) 337-0666
scott@scottdowens.com

Steven R. Jaffe (Fla. Bar No. 390770)
steve@pathtojustice.com
Seth M. Lehrman (Fla. Bar No. 132896)
seth@pathtojustice.com
Mark S. Fistos (Fla. Bar No. 909191)
mark@pathtojustice.com
FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Facsimile: (954) 524-2822

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 21st day of March 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this 21st day of March 2014 via U.S. mail and/or some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

SCOTT D. OWENS, ESQ.
664 E. Hallandale Beach Blvd.
Hallandale Beach, Florida 33009
(954) 589-0588 Phone
(954) 337-0666 Fax
scott@scottdowens.com

By: s/ *Scott D. Owens*
Scott D. Owens, Esq.
Florida Bar No. 0597651