UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-cv-62044-JIC

CHRISTOPHER LEGG,

    Plaintiff,

vs.

VOICE MEDIA GROUP, INC.,

    Defendant.
_____/

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Sanford L. Bohrer
sbohrer@hklaw.com
Scott D. Ponce
sponce@hklaw.com
Brian W. Toth
brian.toth@hklaw.com
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Fax: (305) 789-7799

Attorneys for Voice Media Group, Inc.

Three legal principles apply to Legg's motion for summary judgment. ECF No. 67. The first and second are well-established burdens that apply to all motions for summary judgment. First, Legg, as the movant, "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Second, "[o]nly when that burden has been met does the burden shift to [VMG] to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* The third and final legal principle applies to situations, like this one, where the movant also bears the burden of proof at trial. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation marks omitted); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991) (same); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (similar); *cf. Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) . . . mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

As will be shown, a straightforward application of these three legal principles leads to one conclusion only: Legg's motion for summary judgment must be denied. First, Legg has failed to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial as to whether VMG made any call using any automated telephone dialing system to any telephone number assigned to a cellular telephone service. *See* 47 U.S.C. § 227(b)(1)(A). Second, even if the burden had shifted to VMG to demonstrate that material issues

of fact preclude summary judgment, VMG has demonstrated the existence of such material issues, especially when resolving all ambiguities and drawing all reasonable factual inferences from the material in the record in the favor of VMG. *See Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir. 2012). Last, Legg—who bears the burden of proof on all elements of his claim but has barely taken any discovery to prove them—has so thinly supported his motion that it has become clear that he would never be entitled to a directed verdict at trial, even if his evidence went uncontroverted. Let us be blunt: Legg has lost this case.

## I.   ARGUMENT

VMG will address Legg's arguments in the order in which they are raised in Legg's motion for summary judgment.

### A.   No Automatic Telephone Dialing System Was Used

Legg states that there is no genuine issue of material fact that the text messages were sent using an automatic telephone dialing system (ATDS). *See* Pl.'s Mot. for Summ. J. 5–8. Legg is wrong.

To begin, it is important to stress just what constitutes an ATDS. The Telephone Consumer Protection Act (TCPA) defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1). As stated in VMG's motion for summary judgment, the Federal Communications Commission (FCC) has—solely for equipment known as predictive dialers—rejected the argument that a random or sequential number generator be required to be regarded as an ATDS. *See* Def.'s Mot. for Summ. J. 6–8. Because predictive dialers are quite different from the equipment at issue in this case, it bears emphasizing the FCC's description of them. Predictive dialers are

> equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call. The principal feature of predictive dialing software is a timing function, not number storage or generation.

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, 14091 (2003) (footnotes omitted).

The FCC has not disavowed or relaxed the random- or sequential-number generator requirement in any other context. Importantly, the FCC has not disavowed or relaxed this requirement in the context of text-messaging equipment. In 2012, SoundBite Communications, Inc., a company—like Phaz2—that "sends text messages on behalf of a number of companies that have obtained express consent to send texts to particular wireless subscribers," filed a petition with the FCC contending in part that "it does not use an automatic telephone dialing system, as defined by the TCPA, to send such text messages because the software used to send the confirmation text does not have the capacity to store or produce telephone numbers to be called using a random or sequential number generator to dial such numbers." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 27 FCC Rcd. 15391,15392–93 (2012). Because the FCC ruled on alternative grounds, the FCC declined to "address SoundBite's arguments that it is not using an autodialer, as defined by the TCPA, to send such messages." *Id.* at 15398. (Presumably, the FCC could have concluded simply that the question whether SoundBite's equipment constituted an ATDS was already decided, but it did not do so.) The FCC, moreover, has not retreated from earlier statements that the prohibitions of the TCPA "clearly do not apply to functions like 'speed dialing,' 'call forwarding,' or public

3

telephone delayed message services (PTDMS) because the numbers called are not generated in a random or sequential fashion." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 FCC Rcd. 8752, 8776 (1992). It therefore does not matter whether the Court may lack jurisdiction to revisit the FCC's interpretation that a predictive dialer constitutes an ATDS, because the equipment at issue in this case is plainly not a predictive dialer. *See Osorio v. State Farm Bank*, F.S.B., — F.3d —, 2014 WL 1258023, at *12 (11th Cir. Mar. 28, 2014) (concluding that even if the court lacked jurisdiction "to cast doubt on the validity of the FCC's order," the FCC order was "not applicable regardless of whether it is otherwise valid"). Nor does Legg contend that it is; indeed, *nowhere in any of Snyder's declarations is the term* predictive dialer *even to be found*. Accordingly, the statutory definition of an ATDS must be applied here.[1]

With this understanding, Legg's assertion that there is no genuine issue of material fact that the text messages were sent using an ATDS lacks merit. In support, Legg cites three things in the record. The first is the declaration of Legg's proposed expert witness, Randall Snyder, "who has opined that the technology utilized to send SMS messages to the cellular telephones of the Class Members constitutes an 'automatic telephone dialing system.'" Pl.'s Mot. for Summ. J. 6 (quoting Second Supplemental Decl. Snyder ¶ 35). But, as stated more fully in VMG's motion to exclude Snyder's testimony, Snyder—who has no formal legal training at all—may not make an ultimate legal conclusion, which is a conclusion that solely the Court may make. *See* Def.'s Mot. to Exclude the Expert Witness Testimony of Randall Snyder 9–10 (citing authorities), ECF No. 66. At any rate, Snyder's conclusory statement that the equipment constitutes an ATDS

---

[1] Legg often touts the FCC's observation that it expects "automated dialing technology to continue to develop." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, 14092 (2003). But if such technology is to constitute an ATDS under the law, only Congress or the FCC may so conclude.

provides little support anyway. As the Eleventh Circuit has stated, "an expert opinion which is merely conclusory, even if couched in the language of the relevant legal standard, will be of little assistance to a court." *Dolihite v. Maughon, M.D.*, 74 F.3d 1027, 1046 n.33 (11th Cir. 1996); *cf. Rogers v. Evans*, 792 F.2d 1052, 1062 n.9 (11th Cir. 1986) (approving an order granting motion to strike affidavit of expert witness because the affidavit was "phrased in conclusory terms without citing facts").

The second thing in the record that Legg cites is Snyder's observation that "in one instance the 'VMG text messaging program sent 195 mobile-terminated text messages to 195 cellular telephone subscribers within 16 seconds. An average of one message sent every 0.08 seconds.'" Pl.'s Mot. for Summ. J. 7 (quoting Second Supplemental Decl. Snyder ¶ 30). But Legg must establish the existence of equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers. Snyder's observation, at most, establishes only that multiple text messages were sent rapidly to multiple subscribers. This, too, does not establish the existence of an ATDS.

Last, Legg cites a text message produced by Phaz2 about which Legg claims that Phaz2 "admit[s] that it autodials the text messages that are the subject of this litigation." *Id.* 7–8. The text message indeed states, "Receive autodialed txt offers+specials 3x/wk." *Id.* 8. But the "autodialed" language was included only to comply with recent FCC requirements. *See* Def.'s Opposing Statement of Material Facts (OSMF) ¶ 42. The earlier confirmatory text messages that Legg quotes in full in his complaint contain no such reference. *See* Compl. ¶¶ 21, 23, 25. Accordingly, the "autodialed" language—itself just a conclusory statement that sheds no light on the elements of an ATDS—is not an admission by Phaz2 about what kind of equipment it uses. *See* Def.'s OSMF ¶ 42.

5

In sum, none of the material in the record establishes that there are no genuine issues of material fact about the existence of an ATDS.

Worse for Legg, none of material in the record—Legg's best-case scenario, presumably—establishes that he would be entitled to a directed verdict if this evidence went completely uncontroverted at trial. *See C.A.R. Transp. Brokerage*, 213 F.3d at 480; *Int'l Shortstop*, 939 F.2d at 1264–65. Stated differently, Legg has failed to make a showing sufficient to establish the existence of an element essential to his case, i.e., that an ATDS was used, and on which Legg bears the burden of proof at trial. *See Celotex*, 477 U.S. at 322. In this regard, it bears repeating that Legg conducted almost no discovery to establish the existence of an ATDS. Although he could have done so, Legg did not depose a corporate representative of either VMG or Phaz2 about the kind of equipment that VMG and Phaz2 used in connection with the text-messaging program. *See* FED. R. CIV. P. 30(b)(6). Although he could have done so, Legg did not serve on either VMG or Phaz2 a request to inspect the equipment that VMG and Phaz2 used in connection with the text-messaging program. *See id.* 34(a). And although Legg did serve document requests on both VMG and Phaz2, the only document in the record relevant about the kind of equipment was used is a three-page technical description of Phaz2's text-messaging system—Phaz2 Stiletto P2™ solution. *See* Pl.'s Mot. Summ J., P0971–973, ECF No. 67-5. That description does suggest that Phaz2's equipment stores recipient telephone numbers, which the equipment undisputedly does. *See also* Decl. Sandra Holmes ¶ 5, ECF No. 65-5. But nothing in that description discusses the remaining elements of an ATDS: the existence of equipment that has the capacity to store or

produce telephone numbers *to be called*, *using a random or sequential number generator*, *and to dial such numbers*.[2]

Instead, Legg has chosen to rely solely on Snyder's declarations to establish the existence of an ATDS. Yet the only document about the equipment involved on which Snyder himself appears to have relied is the technical description. *See* Second Supplemental Decl. Snyder ¶ 3; Supplemental Decl. Snyder ¶ 3.[3] Simply put, Snyder's proposed testimony—which is plainly not "based on sufficient facts or data," FED. R. EVID. 702(b)—is "entirely unreliable," *see Dominguez v. Yahoo!, Inc.*, 2014 WL 1096051, at *5 (E.D. Pa. Mar. 20, 2014) (granting summary judgment for defendant and concluding that no evidence offered by the plaintiff—including Snyder's declaration—disputed Yahoo!'s assertion that "its service could not randomly or sequentially generate telephone numbers, but only sent messages to a user that had authorized them and only when that user received an email").

In sum, Legg—who bears the burden of proof of establishing that an ATDS was used—has wholly failed to do so, and Legg's motion for summary judgment therefore fails. *See Int'l Shortstop*, 939 F.2d at 1265 ("[B]ecause the moving party has the burden of proof . . . , the nonmoving party may also defeat the motion by showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact finder to return a verdict in favor of the moving party."). But even if Plaintiff had met his burden, and even if the burden had therefore shifted to

---

[2] Even Legg appears to have recognized that the documents shed little light about the kind of equipment used. After Phaz2 produced documents responsive to the subpoena, Legg, through his counsel, expressed his "position that Phaz2's production was lacking with respect to the alleged use of an auto-dialing system." E-mail from Seth Lehrman to Pooya Sohi (Feb. 21, 2014), Def.'s Resp. Pl.'s Second Mot. to Amend Scheduling Order to Extend Date for Expert Witness Reports, ECF No. 62-2. Legg never followed up on remedying the alleged lacking production.

[3] The technical description can be found at pages Bates labeled P0971–P0973 of Phaz2's New Client Handbook. *See* ECF No. 66-2. They are the only pages of the New Client Handbook with any discussion about the kind of equipment involved.

VMG, plenty of material in the record—especially when viewed in the light most favorable to VMG—demonstrates that no ATDS was used in this case. As set forth in VMG's motion for summary judgment, representatives of both VMG and Phaz2 have declared that neither company ever used any equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator or from any list of numbers or any database of numbers, and to dial such numbers. *See* Def.'s OSMF ¶ 27. Therefore, even if Plaintiff had met his burden, VMG has demonstrated that a genuine issue of material fact exists as to whether an ATDS was used.[4]

### B. VMG Is Not Liable for Phaz2's Actions

Legg next contends that VMG is liable "even if the calls at issue were placed by Phaz2 on [VMG]'s behalf." Pl.'s Mot. for Summ. J. 9.[5] In support, Legg relies chiefly on a recent order by

---

[4] Legg relies on two decisions that he contends stand for the proposition that because Snyder's "expert testimony has not been challenged by any opposing expert testimony from [VMG], [Legg] is entitled to summary judgment." Pl.'s Mot. Summ. J. 7 (citing *Webster v. Offshore Food Serv.*, 434 F.2d 1191 (5th Cir. 1970), and *Farooq v. MDRB Corp.*, 275 F. App'x 11 (D.C. Cir. 2008)). These decisions stand for no such proposition. *Farooq* is a summary three-paragraph judgment that is distinguishable on its face. *Webster*, too, is distinguishable. There, the Fifth Circuit affirmed the grant of summary judgment because a doctor-expert's testimony on medical causation, which was "beyond the competence of lay determination," went unrebutted, and narrowly held "*only* that, *in the absence of opposing evidence*, the unequivocal testimony offered in support of the motion *in this case* supported the District Court's conclusion that there was no genuine issue of material fact to be resolved." 434 F.2d at 1193–94 (emphasis added).

Affirming a grant of summary judgment in a medical-causation case hardly compels a conclusion that Legg is "entitled" to summary judgment here. If anything, *Webster* supports denying Legg's motion. That is so because, as the Fifth Circuit observed, "the grant of a motion for summary judgment is often inappropriate where the evidence bearing on crucial issues of fact is in the form of expert opinion testimony," because "the trier of fact is entitled to weigh the credibility of the witness and to value his testimony in light of his demeanor on the statement," and "the trier of fact is not bound by expert testimony and may substitute its own common-sense judgment for that of the experts." 434 F.2d at 1193.

[5] In his motion for summary judgment, Legg does not appear to assert that VMG itself made any call within the meaning of the TCPA. Indeed, a close review of Legg's Statement of Material Facts fails to cite any material in the record showing that VMG sent the text messages, and

8

the FCC, which concluded that although "a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be vicariously liable under federal common law principles of agency for violations of either section 227(b) or 227(c) that are committed by third-party telemarketers." *Dish Network, LLC*, 28 F.C.C.R. 6574, 6574 (2013); *see also id.* at 6584 ("Federal statutory tort actions, such as those authorized under the TCPA, typically are construed to incorporate federal common law agency principles of vicarious liability . . . ."). VMG does not dispute whether the TCPA embodies such common-law agency principles. But VMG does dispute whether Legg may seek to use them now. Legg has pleaded nothing about vicarious liability in his complaint, and Legg should therefore not be permitted to invoke such principles, for the first time, at the summary-judgment stage.

As this Court recently made clear in a TCPA case, "If a plaintiff's theory of recovery against a defendant is premised upon vicarious liability, it must be alleged in the complaint." *Palm Beach Golf Ctr.-BOCA, Inc. v. Sarris*, — F. Supp. 2d —, 2013 WL 5972173, at *7 (S.D. Fla. Oct. 22, 2013) (Williams, J.). In *Sarris*, this Court granted the defendant's motion for summary judgment on the plaintiff's TCPA claim because, like here, the defendant did not itself send the allegedly offending facsimile and the plaintiff had failed to allege vicarious liability in the complaint. *See id.* at *6–7. This Court stated:

> In the complaint, Plaintiff's factual allegations are, quite simply, that Defendant—the Sarris dental practice—transmitted a fax advertisement to Plaintiff without Plaintiff's permission. Plaintiff does not name B2B as a party in this matter and never mentions B2B in the complaint. But the facts are undisputed—and Plaintiff concedes—that an alleged fax was sent by B2B, not Defendant. Therefore, the only theory of liability against Defendant under the TCPA that is supported by the facts is vicarious liability, which Plaintiff plainly failed to plead and raised only in its summary judgment briefing. This defect is, by itself, fatal at the summary judgment stage.

---

instead appears to reflect the assertion that it was Phaz2 that actually sent the text messages. *See* Pl.'s Statement of Material Facts ¶¶ 28, 30, ECF No. 67-10.

9

*Id.* at *7 (citations and footnote omitted).

The same result should follow here. In the complaint, Legg alleges that only VMG sent the text messages to Legg. *See* Compl. ¶¶ 2, 28–30, 44, 48. Legg does not name Phaz2, or any other person or entity, as a party to this action, and does not allege anything about vicarious liability. But here, as in *Sarris*, the only theory of liability that may be supported by the facts is vicarious liability. Because Legg failed to plead vicarious liability in his complaint, however, he should not be permitted to seek to hold VMG liable on such a theory now. *See Sarris*, — F. Supp. 2d at —, 2013 WL 5972173, at *7 ("Summary judgment [for the defendant] is appropriate in instances where a plaintiff fails to allege vicarious liability in the complaint and where, in fact, the conduct alleged in the complaint was not defendant's, but rather that of defendant's agents." (citing *Schaffer v. A.O. Smith Harvestore Prods., Inc.*, 74 F.3d 722, 731 (6th Cir. 1996))).[6]

Even if the Court were to excuse Legg's failure to plead a vicarious-liability theory in his complaint, the Court should not excuse Legg's failure to articulate such a theory in his motion for summary judgment. To begin with, despite Legg's various citations to "on behalf of" liability, *see* Pl.'s Mot. Summ. J. 9 (citing *Mey v. Monotronics Int'l, Inc.*, 959 F. Supp. 2d 927 (N.D. W.Va. 2013)), such liability exists under only 47 U.S.C. § 227(c)(5) ("A person who has received more than one telephone call . . . by or on behalf of the same entity . . . ."). Legg, however, has sued

---

[6] Nothing in *Sarris* is contrary to the FCC's *Dish Network* order or its statement therein that "nothing in this order requires a consumer to provide proof—at the time it files its complaint—that the seller should be held vicariously liable for the offending call." *Dish Network*, 28 F.C.C.R. 6593. The Court noted that the FCC's requirement was "consistent with the requirements of Federal Rule of Civil Procedure 8, which requires that a complaint not contain proof, but rather enough factual content 'to raise a reasonable expectation that discovery will reveal evidence' of a claim." *Sarris*, — F. Supp. 2d at —, 2013 WL 5972173, at *7 n.15 (citation omitted). The Court stated, however, that "the complaint's factual content does not begin to address vicarious liability, Plaintiff's only theory of liability against the named Defendant." *Id.* So too here.

10

VMG under only § 227(b), which contains no "on behalf of" language. Because of "the difference in language between the two sections of the statute," "district courts have held that there is no 'on behalf of' liability for defendants under section 227(b).'" *Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 1242 (S.D. Fla. 2013) (collecting citations). Indeed, even the decision Legg relies on—*Mey*—is a § 227(c)(5) case, and not a § 227(b) case. To the extent that Legg is seeking to hold VMG liable for actions that Phaz2 took "on behalf of" VMG, then Legg's motion fails "as a matter of law." FED. R. CIV. P. 56(a).[7]

The FCC has indeed concluded "that vicarious liability under federal common law agency principles is also a violation of section 227(b)." *Dish Network*, 28 F.C.C.R. at 6586. The FCC explained these common-law agency principles in detail:

> The classical definition of "agency" contemplates "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." Potential liability under general agency-related principles extends beyond classical agency, however. A principal may be liable in circumstances where a third party has apparent (if not actual) authority. Such "[a]pparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." Other principles of agency law may support liability in other cases. For example, a seller may be liable for the acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits. Such ratification may occur "through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences."

*Id.* (footnotes omitted). In deciding issues of vicarious liability under the TCPA, courts analyze these well-recognized agency principles, too. *See, e.g.*, — F. Supp. 2d at —, 2013 WL 5972173,

---

[7] Legg's reliance on a trial transcript in the case *Bronson & Migliaccio, LLP*, No. 09-cv-61164-UU (S.D. Fla. May 26, 2010), is off the mark. Putting to the side the fact that defense counsel in *Bronson* conceded that the equipment at issue in that case was "a predictive automated dialer," Pl.'s Mot. Summ. J. 10, Judge Ungaro stated that the issue before her was not "an agency question," *id.* 10. The trial transcript's relevance to Legg's argument on vicarious liability is thus unclear.

at *8–10 (analyzing theories of formal agency, apparent authority, and ratification); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012) (stating that "to succeed on this vicarious liability theory, [the plaintiff] must demonstrate that these entities acted as an agent of [the defendant]: that [the defendant] controlled or had the right to control them and, more specifically, the manner and means of the text message campaign they conducted"). Apart from passing citations to orders and decisions, *see* Pl.'s Mot. Summ. J. 9, 12, Legg does not argue that any of these principles of agency applies to this case. Legg does not attempt to establish that no genuine issues of material fact exist as to a formal-agency relationship, an apparent-agency relationship, or ratification. And Legg does not explain how any of these principles would apply, either. Neither this Court nor VMG should be required to guess just which of these agency principles—if any—Legg is seeking to draw on in support of his motion for summary judgment. "[T]he duty of the court is not [to] develop [a party's] arguments for him, find the legal authority to support those arguments, or guess at what part of the record may be relevant." *Morrissey v. Stuteville* (*In re Morrissey*), 349 F.3d 1187, 1189 (9th Cir. 2003) (O'Scannlain, J.) (internal quotation marks omitted) (second alteration in original).

Instead, Legg argues only that VMG and Phaz2 have a "direct relationship," Pl.'s Mot. Summ. J. 9, and an "intimate involvement in the delivery of text messages," *id.* 12. But Legg has cited no authority that such a relationship or involvement gives rise to any kind of liability. Legg has thus failed to show that he "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). And by citing no authority, Legg has failed to comply with the Local Rules on this argument, too. *See JPMorgan Chase Bank, N.A. v. Hayhurst Mortg., Inc.*, 2010 WL 2949573, at *1 n.1 (S.D. Fla. July 26, 2010) (concluding that where the movant "fails to cite any case law supporting its request," such failure "alone is sufficient to deny" its request because "[e]very

motion when filed shall include or be accompanied by a memorandum of law citing supporting authorities" (quoting S.D. FLA. L.R. 7.1(a))).

At any rate—under whatever principle of agency Legg may be seeking to use—Legg has failed to met his burden to show the Court, by reference to materials on file, that there are no genuine issues of material fact about agency that should be decided at trial. *See Clark*, 929 F.2d at 608. The first thing that Legg cites in the record to establish the "direct relationship" is the agreement between VMG and Phaz2. *See* Pl.'s Mot. Summ. J. 11. The agreement, however, disavows any kind of agency relationship between VMG and Phaz2, and instead establishes that VMG and Phaz2 have only an independent-contractor relationship. *See* Def.'s OSMF ¶ 43. Legg cites other documents, *see* Pl.'s Mot. Summ. J. 11–12, but those documents are fully consistent with VMG's and Phaz2's independent-contractor relationship concerning the use of text-messaging services, and Legg has not cited any particular part of them suggesting otherwise. Thus, not only has Legg failed to meet his burden that there are no genuine issues of material fact as to vicarious liability, but, even if he had, the agreement and documents themselves demonstrate that a genuine issue of material fact exists—especially when viewed in the light most favorable to VMG.

## II.  CONCLUSION

Legg's motion for summary judgment is without merit. It serves only to demonstrate that Legg does not have sufficient evidence to ever prevail in this action. The Court should summarily deny it.

Respectfully submitted,

s/Brian W. Toth
Sanford L. Bohrer
Florida Bar No. 160643
sbohrer@hklaw.com
Scott D. Ponce
Florida Bar No. 169528
sponce@hklaw.com
Brian W. Toth
Florida Bar No. 57708
brian.toth@hklaw.com
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Fax: (305) 789-7799

Attorneys for Voice Media Group, Inc.

**CERTIFICATE OF SERVICE**

I certify that on April 7, 2014, I filed a copy of the foregoing with the Clerk of Court using CM/ECF, which will notify all counsel of record of the foregoing.

s/Brian W. Toth

#28844493_v2

14