UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:13-cv-62044-JIC

CHRISTOPHER LEGG, an individual, on
behalf of himself and all others similarly situated,

    Plaintiff,

v.

VOICE MEDIA GROUP, INC.,
a Colorado Corporation,

    Defendant.
_____/

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Christopher Legg, files this Reply in Support of his Motion for Summary Judgment [ECF No. 67], and further states as follows: [1]

### I.    Defendant used an automatic telephone dialing system.

Plaintiff contends that the equipment Defendant used to run their automated text message alert program falls squarely within the Federal Communications Commission's ("FCC") Orders describing what constitutes an "automatic telephone dialing system" ("ATDS" or "autodialer"). Moreover, it is Plaintiff's contention that this Court is not free to disregard the FCC's Orders under both the Administrative Orders Review Act (hereinafter, "the Hobbs Act"), or the test outlined in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Conversely, Defendant suggests that the FCC Order(s) at issue are inapplicable as they pertain only to a specific type of telephone equipment, namely a "predictive dialer", and that the equipment used by Defendant, Phaz2, Inc.'s "Phaz2 StilettoP2™", is somehow materially

---

[1] Plaintiff respectfully requests that this Court defer ruling on the present motion until a Class has been certified, notice has been provided to the members of the Class, and Class members have had an opportunity to opt-out of this class action if they so desire. *See generally*, *Matsushita Elec. Industrial Co. v. Epstein*, 516 U.S. 367, 116 S. Ct. 873, 134 L. Ed. 2d 6 (1996) (under Federal Rule of Civil Procedure 23, "[a]ll members of the class, whether of a plaintiff or a defendant class, are bound by the judgment entered in the action unless, in a Rule 23(b)(3) action, they make a timely election for exclusion." 2 H. Newberg, Class Actions § 2755, p. 1224 (1977)).

different. *See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment*, ECF No. 75; p. 1. However, Defendant's interpretation is demonstrably incorrect. Plaintiff has shown, and reiterates here, that under the FCC's 2003 TCPA Order as well as the FCC's 2012 TCPA Declaratory Ruling, *In re SoundBite*[2], the equipment utilized by Defendant is an ATDS. Additionally, in an attempt to raise a disputed issue of material fact where one does not exist, Defendant raises meritless criticisms about Plaintiff's expert's opinion, the evidence upon which Plaintiff's expert relied, and the significance of Phaz2, Inc.'s admission that the equipment used by Phaz2, Inc. to send the SMS messages under contract with Defendant is an autodialer. The evidence indisputably shows that Defendant used an ATDS, and none of the stultified and self-serving interpretations of the law (or attempted back-tracking of previous admissions) changes that fact.

**Defendant cannot escape the FCC's interpretation of** *automatic telephone dialing system*.

The FCC determined that the basic function of ATDS equipment, including both predictive dialers and the equipment at issue here, is "the *capacity* to dial numbers without human intervention." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14092, ¶ 132 (2003) (emphasis in original) (2003 TCPA Order). While the 2003 TCPA Order concludes that predictive dialers are ATDS, there is no indication that the analysis leading to this conclusion is applicable uniquely to predictive dialers, and in fact there is significant evidence that the FCC sought to establish criteria which would continue to apply as technology evolved. The 2003 TCPA Order was written pursuant to the FCC's mandate to "consider what rules should apply to future technologies as well as existing technologies." *Id*. at fn. 436. Additionally, the 2003 TCPA Order states:

> In the past, telemarketers may have used dialing equipment to create and dial 10-digit telephone numbers arbitrarily.  As one commenter points out, the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective.  The basic function of such equipment, however, has not changed—the *capacity* to dial numbers without human intervention.  We fully expect automated dialing technology to continue to develop.

---

[2] *In re SoundBite Communications, Inc., 27 FCC Rcd. 15391, No. 02-278, 2012 WL 5986338 (Nov. 29, 2012)* (hereinafter, *In re SoundBite* or *SoundBite*)

*Id.* at para. 132 (footnote omitted). Clearly, the FCC's concern is that technological advance was producing equipment which dialed from lists of numbers, and that such equipment would be deemed to fall outside the statutory definition, 47 U.S.C. § 227(a)(1), which references random or sequential number generation. Equally clear is that while predictive dialers may have been the new technology which prompted the 2003 TCPA Order, the scope of said Order was not so narrow as to embrace only this one technology. Plaintiff does not in any way contend that the equipment utilized by Phaz2, Inc. constitutes a predictive dialer – unlike a predictive dialer, there is no hope that the recipient will be contacted by a human being. Instead, responses to consumers who send text messages are sent automatically by Phaz2, Inc.'s equipment, and the content of these responses are pre-programmed by Defendant using Phaz2, Inc's Application Program Interface. *Supplemental Declaration of Randal* Snyder, ECF No. 66-2, ¶ 24. In sum, to the extent that Voice Media Group suggests that the 2003 TCPA Order applies only to predictive dialers, Defendant is mistaken. *See SoundBite* at ¶2, fn. 5.

Furthermore, Defendant contends that because the equipment Phaz2, Inc. admits to using does not utilize a random or sequential number generator - an ambiguous term which Defendant fails to define - it consequently cannot be regarded as an ATDS. In order to escape the FCC's Declaratory Ruling, *In re SoundBite*, which holds the contrary, Defendant mistakenly argues once again that the FCC has only addressed predictive dialers, and not the equipment at issue here. [ECF No. 75; pp. 3-4]. However, the *SoundBite* ruling was not in any way restricted to predictive dialers: "[t]he Commission has emphasized that this definition covers **any equipment** that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In re SoundBite*, 27 FCC Rcd. 15391, 15392–93, ¶ 2, fn. 5 (2012) (bold emphasis added, italics in original). Defendant notably chooses to ignore the verbiage in the *SoundBite* decision altogether. Instead, Defendant relies on a disingenuous argument that *SoundBite* did not address ATDS technology because the FCC declined to opine on the specific equipment petitioner used. [ECF 75; p. 3]. However, the FCC decided *SoundBite* on the basis that a one-time text message confirming a consumer's desire to opt out of receiving future text messages is within the scope of the consumer's prior express consent, and therefore not a violation of the

TCPA. *SoundBite* at ¶ 7. As such, there was no need to address petitioner's equipment and thus the omission has no significance at all.[3]

Notably, the Parties disagreement on the use of an ATDS technology seems to be limited only to the applicability of the FCC's definition of an ATDS as stated in *SoundBite*, and not the facts showing the capacity of the equipment. Both Parties to this action agree that the equipment used had the capacity to store a list of numbers. [ECF No. 75; p.6]. Also, the equipment at issue is clearly able to dial those numbers without human intervention, as it was able to do so 195 times within 16 seconds, which Defendant concedes occurred. Id. at 5. Phaz2, Inc.'s documentation clearly discloses that its equipment can schedule text messages for later delivery. [ECF No. 66-2; p. 63] "The scheduled broadcast date and time is saved." These facts, not to mention the wealth of other evidence Plaintiff has presented to this Honorable Court, demonstrate that the equipment Defendant used has the capacity to call telephone numbers from lists without human intervention, and therefore comports squarely with the FCC's interpretation in *SoundBite*.  Defendant's argument that it did not use an ATDS because the equipment it used to send text messages *en masse* to a list of consumers does not feature random or sequential number generation is therefore false.

Additionally, this Court is not free to disregard the FCC's determination under the Hobbs Act, as only Federal Circuit Courts are vested with the authority to challenge an FCC Order. 28 U.S.C. § 2342(1). *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443 (7th Cir. 2010) ("But deeming agency action valid or ineffective is precisely the sort of review that the Hobbs Act delegates to the courts of appeals in cases challenging final FCC orders.").  However, should the Court decide that the 2003 TCPA Order is not entitled to Hobbs Act deference, it should none the less give it deference under the *Chevron* doctrine. The FCC's definition passes the first

---

[3] Defendant, while discussing *SoundBite*, directs the Court to the FCC's 1992 TCPA Order holding that speed dialing, call forwarding, or public telephone delayed message services are not subject to the TCPA because these operations do not involve the capacity to generate numbers in a random or sequential fashion. See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 FCC Rcd. 8752, 8776 (1992). Defendant asserts that the FCC has not retreated from the requirement of random number generation; however, none of the stated operations dial numbers from lists either. Defendant's assertion in fact supports the idea that dialing from a list satisfies the random or sequential number generation requirement, as further elaborated on below.

step of *Chevron*[4] because the term "random or sequential number generator" from 47 U.S.C. § 227(a)(1) is not defined, and could be ascribed several meanings including a list of numbers. *See Ass'n of Private Sector Colleges & Universities v. Duncan*, 681 F.3d 427, 443 (D.C. Cir. 2012) (explaining that at *Chevron* step one, the statute must unambiguously foreclose alternate interpretation). In point of fact, early methods of random number generation were nothing more than lists of numbers, and functioned by choosing a starting location and then reading the desired number of digits.[5] Under *Chevron* step two,[6] the definition the FCC ascribed to an ATDS should be given controlling weight as it is not contrary to the statute, it was promulgated after notice and comment, and is justified by the FCC's mandate to keep the TCPA effective in the face of ever advancing technology. *See* 137 Cong. Rec. S18784 (1991) (statement of Sen. Hollings) ("The FCC is given the flexibility to consider what rules should apply to future technologies as well as existing technologies."); 137 Cong.Rec. S9840-02 (1991) (statement of Sen. Hollings) ("Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall."). Equipment which dials telephone numbers from a list without human intervention is therefore an ATDS under the FCC's binding interpretation of the TCPA.

### Summary Judgment is supported by the uncontroverted testimony Plaintiff's Expert Witness and the admissions of Phaz2, Inc.

Finally, Defendant attempts to discredit Plaintiff's expert opinion as a mere impermissible legal conclusion [ECF 75; p. 4], and incredibly even attempts to discredit Phaz2, Inc.'s statement that it used an autodialer, Id. at 5. First, Plaintiff's expert does not offer only a conclusory legal opinion, but rather arrives at the conclusion that Phaz2, Inc.'s equipment meets

---

[4] In reviewing an agency's regulation under step one of the *Chevron* analysis, the Court asks "whether Congress has directly spoken on the precise question at issue." *Chevron,* 467 U.S. at 842.

[5] *See* A Million Random Digits with 100,000 Normal Deviates. Rand Corporation. ISBN/EAN: 0-8330-3047-7. 1955.
Available at http://www.rand.org/pubs/monograph_reports/MR1418.html (last visited on April 16, 2014).

[6] At step two "[i]f Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are ... manifestly contrary to the statute." *Chevron,* 467 U.S. at 843–44.

the definition of an ATDS in light of his review of evidence including: the volume of messages sent in a short time frame[7], his experience engaging directly with Defendant's text message alert systems[8], Phaz2, Inc.'s role in the mobile communications industry as a value added service provider[9], and the technical information on the capacity of Phaz2, Inc.'s equipment contained in Phaz2, Inc.'s New Client Handbook[10]. It is permissible for an expert to testify that a specific set of facts does or does not fall within a statutory definition. *Sancom, Inc. v. Qwest Commc'ns Corp.*, 683 F. Supp. 2d 1043, 1051 (D.S.D. 2010). Mr. Snyder merely applied the facts to readily accessible legal standards, which is in essence no different than the expert in a products liability case who concludes that a device is unreasonably dangerous, or the expert in a traffic injury case who concludes that a motorist was driving over the speed limit.

Lastly, Defendant contends that Phaz2, Inc. did not mean what it said when it admitted that subscribers to Defendant's text message services would receive autodialed text offers, and that this language was included at Defendant's own request merely to comply with FCC requirements. [ECF No. 75; p. 5]. However, there is no FCC requirement regarding the disclosure of an autodialer; rather, the FCC's rules only require that any written consent "be sufficient to show that [the consumer]: (1) received 'clear and conspicuous disclosure' of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, ¶ 32 (February 15, 2012). There is quite simply no FCC mandate to disclose the use of an autodialer. Defendant's Director of Digital Operations, Stacy Volhein's curiously specific statement: "all confirmation messages will be updated with FCC required language including the term 'autodialed'," [ECF No. 67-1; p. 13] is undoubtedly an admission and reflective of her belief that Defendant was using an autodialer.

## II. Voice Media Group is vicariously liable for the actions of Phaz2, Inc.

**Vicarious Liability does not require a heightened pleading standard.**

---

[7] [ECF No. 66-5; ¶¶ 29-31]
[8] Id. at ¶ 28.
[9] [ECF No. 66-2; ¶¶ 12-17]
[10] Id. at ¶ 23-24.

Defendant does not dispute whether the TCPA embodies common-law agency principles. [ECF No. 75; p. 10]. Despite this admission, VMG doggedly commits several pages of its opposition brief to an attempt to cobble together an argument that Supreme Court precedent and FCC Orders are trumped by an erroneous, distinguishable district court ruling. Specifically, Defendant claims that it cannot be vicariously liable for the actions of its text message broadcaster (Phaz2, Inc.) because Plaintiff's Complaint does not specifically address vicarious liability and the relationship between Defendant and Phaz2. The well-settled fact is, however, that no such pleading requirement exists.

In order create an argument where one does not exist, Defendant simply ignores the bedrock principle of vicarious liability which applies to all civil causes of action created by Congress. *See Meyer v Holley*, 537 U.S. 280, 285 (2003) ("when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules."). There is simply no requirement that Plaintiff plead his claims using specific phrases such as *vicarious liability*. *See Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 926 (9th Cir. 2001) (holding that, although Plaintiff did not "specifically state she was basing her claim against the [Defendant] on the doctrine of `respondeat superior,' under the federal liberal pleading standards, [Plaintiff's] allegations establish a sufficient basis to assert a claim that the [Defendant] is liable under that doctrine."). Defendant's argument appears to treat vicarious liability as though it were a separate cause of action which must be pled; however, vicarious liability, or respondeat superior, is a legal principle that applies as the facts dictate.

According to the Supreme Court in *Meyer v. Holley*, congressional tort actions implicitly include the doctrine of vicarious liability. Vicarious liability is inherent within the TCPA, regardless of whether it is specifically pled in the complaint or not. In *Texas v. American Blastfax,* 121 F. Supp. 2d 1085, 1090 (W.D. Tex. 2000), the Court stated: "It would circumvent the purpose of the TCPA to exempt [a fax broadcaster] from potential liability [under the TCPA] on the theory that it plays no role in sending the advertisements at issue."

The FCC's decision, *In Re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C.R. 12391, 12407-08 (1995), clarified that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning

unsolicited facsimile advertisements." In explaining the phrase, the FCC found a formal relationship was not necessary to establish "on behalf of" liability. Furthermore, the FCC recently specifically disclaimed the need to plead vicarious liability: "**we stress that nothing in this order requires a consumer to provide proof – at the time it files its complaint – that the seller should be held vicariously liable for the offending call**." *In re Joint Petition filed by Dish Network LLC*, 28 FCC Rcd. 6574 (2013) (emphasis added). Therefore, Defendant urges this Court to ignore the FCC and require a pleading standard which does not exist. *See also*, *Smith v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 5346430 (N.D. Ill. Sept. 23, 2013) (noting that "[t]he federal common law of agency as described in the 2013 FCC Ruling is in accord with the Restatement."); *Savanna Grp., Inc. v. Trynex*, Inc., No. 10 C 7995, 2013 WL 4734004 (N.D. Ill. Sept. 3, 2013) (citing 28 F.C.C.R. at 6587). Looking to the underlying policy reflected by the foregoing authorities, a consumer who receives a telemarketing call is only likely to be provided with information regarding the company on whose behalf goods and services are being offered. No information is likely to be provided on the broadcasting company who was involved only in the mechanics of placing the call. As a matter of policy it would be nonsense to require consumers to plead information that they would have no opportunity to obtain without discovery.

### Defendant's interpretation offends both the FCC and the Hobbs Act.

By arguing that the plaintiff must specifically describe in his complaint "formal relationship," between VMG and Phaz2, Defendant necessarily takes the position that this Court should refuse to adopt yet another FCC ruling and thus, abandon its responsibilities under the Hobbs Act. Under the Hobbs Act, 28 U.S.C. § 2342(1), the exclusive forum for challenging an FCC order is a federal court of appeals. *Peoria v. General Electric Cablevision Corp.,* 690 F.2d 116, 119 (7th Cir. 1982) (challenges to "final of the FCC ... may be brought only in a federal court of appeals").

To the extent Defendant seeks a ruling regarding the validity of the FCC's ruling that a formal relationship was not necessary to establish "on behalf of" liability, this court is without jurisdiction to do so. *See generally, Leckler v. Cashcall, Inc.,* 2008 WL 5000528, at *2-3 (N.D. Cal. Nov. 21, 2008) (Hobbs Act, 28 U.S.C. § 2342, in conjunction with judicial review provisions of Communications Act, 47 U.S.C. § 402(a), vests federal courts of appeals with exclusive jurisdiction to determine validity of final orders of the FCC).

The Supreme Court has long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations. *Chevron*, 467 U.S. at 837. While there may be some dispute as to the boundaries of *Chevron* deference, it is paradigmatically appropriate when Congress has clearly delegated agencies the power to issue regulations with the force of law and established formal procedures for the promulgation of such regulations. *Alexander v. Sandoval*, 532 U.S. 275 (2001).

It is undisputed that VMG is liable under the TCPA for text messages sent by its text message service provider Phaz2, Inc. The FCC ruling is clear – proof of a "formal relationship" between VMG and Phaz2 need not be made in order to establish liability. Plaintiff's motion for summary judgment cannot be denied on this issue.

## CONCLUSION

The Defendant placed telephone calls to Plaintiff and the Class members' cellular telephone using an automatic telephone dialing system and without their prior express consent in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii). Consequently, Plaintiff and the Class members are entitled to summary judgment against the Defendant on all matters, including monetary damages and injunctive relief.

Dated: April 17, 2014.

                                                      Respectfully submitted,

                                                      /s/ Scott D. Owens
                                                      SCOTT D. OWENS, ESQ.
                                                      Florida Bar No. 0597651
                                                      664 E Hallandale Beach Blvd
                                                      Hallandale Beach, FL 33009
                                                      Telephone: (954) 589-0588
                                                      Facsimile: (954) 337-0666
                                                      scott@scottdowens.com

                                                      Steven R. Jaffe (Fla. Bar No. 390770)
                                                      steve@pathtojustice.com
                                                      Seth M. Lehrman (Fla. Bar No. 132896)
                                                      seth@pathtojustice.com
                                                      Mark S. Fistos (Fla. Bar No. 909191)
                                                      mark@pathtojustice.com

>FARMER, JAFFE, WEISSING,
>EDWARDS, FISTOS & LEHRMAN, P.L.
>425 North Andrews Avenue, Suite 2
>Fort Lauderdale, FL 33301
>Telephone: (954) 524-2820
>Facsimile: (954) 524-2822
>
>*Attorneys for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 17, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this April 17, 2014 via U.S. mail and/or some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

>SCOTT D. OWENS, ESQ.
>664 E. Hallandale Beach Blvd.
>Hallandale Beach, Florida 33009
>(954) 589-0588 Phone
>(954) 337-0666 Fax
>scott@scottdowens.com
>
>By: s/ *Scott D. Owens*
>Scott D. Owens, Esq.
>Florida Bar No. 0597651