UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-62044-CIV-COHN/SELTZER

CHRISTOPHER LEGG, on behalf of himself
and all others similarly situated,

    Plaintiff,

v.

VOICE MEDIA GROUP, INC., a Colorado
corporation,

    Defendant.
_____/

## ORDER GRANTING MOTION TO EXCLUDE EXPERT TESTIMONY

**THIS CAUSE** is before the Court upon Defendant's Motion to Exclude the Expert Witness Testimony of Randall Snyder [DE 66] ("Motion"). The Court has reviewed the Motion, Plaintiff's Opposition [DE 76], Defendant's Reply [DE 79], and the record in this case, and is otherwise advised in the premises. For the reasons more fully discussed herein, the Court will grant the Motion.

### I.   BACKGROUND

This suit is a putative class action arising from Defendant Voice Media Group, Inc.'s ("VMG") alleged practice of sending unwanted text messages to individual cellular telephone subscribers throughout the United States. VMG operates alert services which transmit text messages to consumers' cellular telephones. DE 1 ¶¶ 6, 19, 32. Plaintiff Christopher Legg subscribed to VMG's alert services in 2012 and early 2013, but sought to unsubscribe in 2013 by sending text messages to VMG containing variations of the terms "STOP" and "STOP ALL." Id. ¶¶ 20–26. Nevertheless, VMG allegedly continued to send text messages to Legg. Id. ¶¶ 27–30.

On the basis of the unwanted text messages from VMG, Legg commenced this action for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. DE 1 ¶¶ 43–50. Legg seeks to bring suit not only on his own behalf, but also on behalf of a class of similarly situated individuals. Id. ¶ 34. Accordingly, Legg has filed a Motion for Class Certification [DE 52], which remains pending. Legg's class ("Proposed Class") encompasses certain individuals who attempted to unsubscribe from VMG's alert services by sending a text message to VMG beginning with the phrase "STOP ALL,"[1] but who nevertheless continued to receive messages from VMG. DE 52 at 4; DE 70 at 8. The parties have also briefed crossing motions for summary judgment. See DE 65 & 67.

Legg's Motion for Class Certification and his arguments on the merits of the case lean heavily upon the proposed testimony of Legg's telecommunications expert, Randall A. Snyder. To date, Snyder has provided three declarations setting forth his opinions and proposed testimony. See DE 66-1 ("Snyder Declaration"); DE 66-2 ("Supplemental Snyder Declaration"); DE 66-3 ("Second Supplemental Snyder Declaration"). Snyder also sat for a videotaped deposition. See DE 66-5. Now having the benefit of this discovery, VMG has moved to exclude Snyder's proposed testimony on certain topics. See DE 66.

---

[1] Legg contends that various permutations of "STOP" and "STOP ALL," such as "STOPALL" or any of those terms variously capitalized, should have stopped messages from VMG, but failed to do so. For purposes of this Order, the Court will consider the phrase "STOP ALL" to also refer to its permutations.

## II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony. See Fed. R. Evid. 702.[2] In applying Rule 702, "district courts must act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant." Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993)). "District courts are charged with this gatekeeping function to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Id. (internal quotation marks omitted). To meet this obligation, courts "must engage in a rigorous inquiry to determine whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable . . . ; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." Id. at 1291–92 (internal quotation marks omitted). "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." Id. at 1292.

---

[2] Under Rule 702, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

3

While Daubert mandates an "exacting analysis of the proffered expert's methodology, it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003) (citation & internal quotation marks omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

Even if proposed expert testimony is admissible under Rule 702, that evidence may be excluded if it is irrelevant or if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403; accord Allison v. McGhan Med. Corp., 184 F.3d 1300, 1309–10 (11th Cir. 1999). Because "expert testimony may be assigned talismanic significance in the eyes of lay jurors," a district court "must take care to weigh the value of such evidence against its potential to mislead or confuse." United States v. Frazier, 387 F.3d 1244, 1263 (11th Cir. 2004) (en banc).

### III. DISCUSSION

In its Motion, VMG attacks three discrete areas of Snyder's proposed testimony. First, VMG argues that Snyder's conclusion regarding the size of the Proposed Class is speculative and lacks a factual basis. Second, VMG contends that Snyder's opinion that VMG used an automatic telephone dialing system within the meaning of the TCPA is an impermissible legal conclusion, and also lacks a factual basis. Finally, VMG seeks to exclude Snyder's testimony that his analysis "corroborates" Legg's view of events as improper bolstering. The Court agrees with VMG on each of these points, and will grant VMG's Motion in its entirety.

### A. Snyder May Not Testify Regarding the Size of the Proposed Class

VMG first argues that Snyder's opinion regarding the size of the Proposed Class should be excluded as back-door lay testimony and because it lacks a factual foundation. Legg does not directly respond to VMG's contentions, but suggests that Snyder's opinion should be considered in connection with Legg's Motion for Class Certification regardless of whether it satisfies the requirements of Rule 702. DE 76 at 3–4. Because Snyder's proposed testimony regarding the size of the Proposed Class does not implicate any special expertise and has an inadequate factual foundation, the Court will exclude Snyder's opinion regarding the size of the Proposed Class for all purposes.

Legg's Proposed Class encompasses certain individuals who attempted to unsubscribe from VMG's alert services by sending a text message to VMG beginning with the phrase "STOP ALL," but who continued to receive messages from VMG. DE 52 at 4; DE 70 at 8. To obtain certification of this Proposed Class, Legg must establish, among other things, that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In his Motion for Class Certification, Legg attempts to establish the numerosity of the Proposed Class with Snyder's conclusion that the Proposed Class includes at least 1,026 individuals. DE 52 at 6.

In the Snyder Declaration, Snyder specifically states his "expert opinion that, at a minimum, the proposed class amounts to 1,026 individuals." DE 66-1 ¶ 7. Snyder bases this opinion on his review of a spreadsheet provided in discovery by a vendor of VMG, Phaz2, Inc. ("Phaz2"). Id. ¶ 17. The spreadsheet is a record of text messages sent by individuals to VMG from March 4, 2013, through July 22, 2013, containing the phrase "STOP ALL". Id.

5

To arrive at his opinion, Snyder first counted the messages reflected in the spreadsheet as containing *only* the phrase "STOP ALL." Id. ¶¶ 18, 20, 22. The spreadsheet showed records of 1,846 such text messages. Id. ¶ 20. The spreadsheet also reflected that the 1,846 messages originated from only 1,026 unique cellular telephone numbers. Id. ¶ 23. Based on this information, Snyder concluded that there are at least 1,026 members of the Proposed Class. Id. ¶¶ 25, 29, 35.[3]

First, Snyder's opinion regarding the size of the Proposed Class is inadmissible because it draws upon no special expertise, and does not help the factfinder understand the evidence or issues in the case. Snyder's estimate of class members is merely a count of telephone subscribers who sent "STOP ALL" messages to VMG as reflected by a spreadsheet produced in discovery. Counting the number of subscribers who sent "STOP ALL" messages is a task that, though perhaps time-consuming, is within the understanding of the average lay person. Expert testimony, on the other hand, is meant to help the factfinder interpret evidence or issues that can only be understood through the application of specialized expertise. Rink, 400 F.3d at 1291. Accordingly, expert testimony is admissible only if it "concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262. Because Snyder's testimony regarding the size of the Proposed Class offers nothing more than what a factfinder could comprehend through the presentation of non-expert witnesses and evidence such as the Phaz2 spreadsheet, the testimony is not properly admitted under Rule 702.

---

[3] In the Second Supplemental Snyder Declaration, Snyder also opines that an algorithm applied to VMG's records could determine with more specificity the actual number of members of the Proposed Class. DE 66-3 ¶¶ 16–23. Snyder has not performed this algorithm on the records at issue, however.

6

Further, Snyder's proposed testimony that "there are at least 1,026 members in the proposed class" is inadmissible because it is misleading and speculative. Snyder bases his conclusion on his observation that, in the spreadsheet he examined, there were 1,026 individuals who sent "STOP ALL" messages to VMG. The obvious problem with Snyder's conclusion is that Legg's Proposed Class is not coextensive with individuals who sent "STOP ALL" messages. Instead, the Proposed Class encompasses individuals who: (1) sent "STOP ALL" messages; and (2) continued to receive advertisements from VMG. DE 52 at 4; DE 70 at 8. Because Snyder's count of subscribers who sent "STOP ALL" messages to VMG does not speak to how many of those individuals continued to receive VMG's advertisements, it does not reflect the size of the Proposed Class, and does not support Snyder's conclusion.

Nor does Snyder salvage his testimony by noting that some individuals sent more than one "STOP ALL" message to VMG. As Snyder himself acknowledges, there are numerous reasons an individual would send more than one "STOP ALL" message to VMG. See DE 66-3 ¶ 21; DE 66-5 at 12–13. In other words, Snyder's assumption that the subscribers who sent more than one "STOP ALL" message to VMG did so because they continued to receive unwanted advertisements is based not on any data, but on Snyder's speculation. A speculative and unsupported expert opinion such as this serves only to mislead and confuse, and not aid, the factfinder. See R&R Int'l, Inc. v. Manzen, LLC, No. 09-60545, 2010 U.S. Dist. LEXIS 94550 at *46–48 (S.D. Fla. Sept. 10, 2010) (excluding expert testimony based on inadequate data as speculative and confusing). Accordingly, the Court will exclude Snyder's opinion regarding the size of the Proposed

Class under Rules 403 and 702. See McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1239–52 (11th Cir. 2005); Allison, 184 F.3d at 1309–10.

Finally, Legg argues that even if Snyder's testimony should not go to the jury, the Court may consider his opinions and the underlying evidence for purposes of ruling upon the pending Motion for Class Certification. A district court, however, must conduct a "Daubert-like critique" of proposed expert evidence before considering the evidence on a motion for class certification. Sher v. Raytheon Co., 419 F. App'x 887, 890–91 (11th Cir. 2011). The Court's conclusion that Snyder's proposed testimony is inadmissible because it lacks a foundation, is speculative, and draws on no special expertise therefore applies with equal force at the class-certification stage.

### B. Snyder May Not Testify that VMG Used an Automatic Telephone Dialing System

In the Supplemental Snyder Declaration and the Second Supplemental Snyder Declaration, Snyder opines that the systems VMG used to send its text messages satisfy the TCPA's definition of an automatic telephone dialing system. VMG seeks to exclude this testimony as impermissibly stating a legal conclusion, and as lacking an adequate foundation. The Court agrees with VMG, and will exclude this portion of Snyder's proposed testimony.

Legg has filed suit under a TCPA provision which allows an individual to bring claims for certain unwanted calls made with an automatic telephone dialing system. See 47 U.S.C. § 227(b)(1)(A). An "automatic telephone dialing system" within the meaning of the TCPA is "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. § 227(a)(1).

Snyder intends to testify that the systems VMG used to send its text messages meet the legal definition of an automatic telephone dialing system. E.g., DE 66-2 ¶ 31. Implicit within this testimony is Snyder's conclusion as to the legal definition of an automatic telephone dialing system. An expert witness, however, may not offer legal conclusions; only the Court may instruct the jury as to the state of the law. Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990). Where an expert offers an opinion as to the legal implications of the facts, that testimony also encroaches on the responsibilities of the judge and jury, and is inadmissible. Id.; see also Dubiel v. Columbia Hosp. (Palm Beaches) L.P., No. 04-80283, 2005 U.S. Dist. LEXIS 45874 at *11–14 (S.D. Fla. Jan. 10, 2005) (striking expert's testimony that hospital operated in full compliance with Fair Labor Standards Act). Because Snyder may not offer a conclusion as to the legal definition of an automatic telephone dialing system, or the legal implications of VMG's systems in relation to that definition, the Court will exclude his proposed testimony that VMG used an "automatic telephone dialing system" within the meaning of the TCPA. See Dubiel, 2005 U.S. Dist. LEXIS 45874 at *12–14; Dow Corning Corp. v. Xiao, No. 11-10008, 2013 U.S. Dist. LEXIS 35552 at *50 (E.D. Mich. Mar. 13, 2013) (excluding testimony of expert that materials did not satisfy legal definition of "trade secret" as impermissible legal conclusion).

Snyder's testimony that VMG used an automatic telephone dialing system also lacks an adequate factual foundation. Snyder's opinion is based primarily upon his review of a client handbook produced by Phaz2, the vendor VMG relied upon to send its text messages. See DE 66-2 ¶ 23. This client handbook purports to set forth instructions and descriptions relating to Phaz2's systems. See id. Ex. B. VMG represents, however,

and Legg does not dispute, that Snyder has not had the opportunity to inspect VMG's or Phaz2's equipment, or to review any testimony regarding VMG's relationship with Phaz2 or the process by which VMG actually sent its text messages. DE 66 at 10–11. Legg responds that Snyder based his opinion on "over 1000 pages of discovery . . . includ[ing] hundreds of pages of emails discussing sending text messages and the legal issues contingent thereto . . . , screen shots and detailed instructions for how [VMG] operated Phaz2, Inc.'s systems . . . , and even the contract detailing the relationship between [VMG] and Phaz2, Inc." DE 76 at 6. Snyder's declarations and deposition testimony contradict Legg's assertions, however, and reflect that Snyder did not consider these additional materials in arriving at his opinion. See, e.g., DE 66-2 ¶¶ 3, 23–26; DE 66-5 at 16–30.

      Phaz2's client handbook, standing alone, provides an insufficient basis for Snyder's opinion regarding the capabilities of VMG's systems. Snyder does not know whether VMG actually used the systems discussed in the handbook, or in the manner provided in the handbook. Indeed, Snyder cannot even say whether Phaz2's own equipment conforms to the specifications discussed in its handbook. Snyder's conclusion upon review of the handbook that "VMG employed and operated an Automatic Telephone Dialing System (ATDS) as defined within the TCPA" (DE 66-2 ¶ 31) is therefore too attenuated from the underlying materials to be of use, with the gap filled only by Snyder's speculation. In contrast, Rule 702 requires that expert testimony bear an adequate relationship to its supporting data. Hendrix v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). The Court therefore will exclude this aspect of Snyder's testimony for the additional reason that it bears an insufficient relationship to the

10

underlying data. See McDowell v. Brown, 392 F.3d 1283, 1300 (11th Cir. 2004) (upholding exclusion of expert's opinions too remote from underlying data).[4]

In the Second Supplemental Snyder Declaration, Snyder attempts to buttress his earlier opinions that VMG used an automatic telephone dialing system by stating that it would be "infeasible and implausible" to send messages at the rate accomplished by VMG without automated means. DE 66-3 ¶¶ 28–32. Snyder arrives at this conclusion through his own experiments of sending text messages to VMG and receiving rapid responses, and a review of VMG's text-message records, which apparently illustrate that VMG sent 195 text messages to 195 cellular telephones over the course of 16 seconds. Id. Snyder's conclusion that VMG's rapid transmission of text messages suggests the use of automated systems, however, does not implicate matters outside the understanding of an average lay person. A reasonable juror would have little trouble drawing the appropriate inferences from VMG's rapid and voluminous transmission of text messages. Snyder's opinion therefore offers no more than what Legg's attorneys could argue to the jury, and does not assist the factfinder in understanding the evidence through the application of technical expertise. Snyder's observations drawn from VMG's rate of sending text messages accordingly are not an appropriate subject of expert testimony. See Frazier, 387 F.3d at 1262–63.

---

[4] The Court notes that it does not exclude Snyder's proposed testimony solely as it relates to Phaz2's systems as reflected in the client handbook. Though reference to Phaz2's handbook provides an insufficient basis for Snyder's opinions regarding VMG's systems and actual practices, the handbook would appear to provide a basis for expert testimony explaining Phaz2's technical capabilities, presuming Legg could establish that the information in the handbook reflects Phaz2's actual systems. The Court accordingly will reserve ruling on the admissibility of Snyder's opinions to the extent they relate solely to the technical capabilities reflected in the client handbook.

11

### C. Snyder May Not Testify that Materials "Corroborate" Legg's Theory of the Case

Finally, VMG attacks Snyder's statement in the Second Supplemental Snyder Declaration that his analysis of VMG's records "fully and completely corroborates all of [Legg's] claims in the original Class Action Complaint" that Legg received unwanted text messages from VMG. See DE 66-3 ¶ 26. VMG contends that this testimony would not help the factfinder understand the evidence at trial, but instead is an impermissible use of an expert to bolster Legg's credibility. The Court agrees with VMG that an average juror could, without the assistance of expert testimony, comprehend the significance of records illustrating that Legg received messages from VMG after attempting to unsubscribe from VMG's services. Snyder's testimony on this point is therefore of minimal utility to the factfinder. Moreover, Snyder's proposed expert opinion raises a "real danger that the jury may accord undue weight to expert evidence that attempts to validate [a party's] testimony." United States v. Pavlenko, 845 F. Supp. 2d 1321, 1327–28 (S.D. Fla. 2012). Because Snyder's opinion that the evidence "corroborates" Legg's claims does not involve the application of special expertise, and threatens to cause prejudice or confusion outweighing its probative value, the Court will exclude this portion of Snyder's testimony under Rules 403 and 702.[5]

---

[5] The Court also notes that in Legg's Opposition, Legg does not address VMG's contention that Snyder's opinion constitutes improper bolstering. Legg's failure to respond to VMG's argument provides an independently sufficient ground to grant this aspect of the Motion by default. See S.D. Fla. L.R. 7.1(c); A1Procurement, LLC v. Hendry Corp., No. 11-23581, 2012 U.S. Dist. LEXIS 176624 at *8–9 (S.D. Fla. Dec. 12, 2012).

## IV. CONCLUSION

In light of the foregoing, the Court will grant VMG's Motion. Snyder's opinion regarding the size of Legg's Proposed Class is unhelpful and speculative. Snyder's opinion that VMG used an automatic telephone dialing system within the meaning of the TCPA supplies an improper legal conclusion and lacks an adequate factual foundation. Finally, Snyder may not testify as to his opinion of the strength of Legg's case. It is accordingly

**ORDERED AND ADJUDGED** that Defendant's Motion to Exclude the Expert Witness Testimony of Randall Snyder [DE 66] is **GRANTED**. The opinions and proposed testimony of Randall A. Snyder regarding the size of the Proposed Class, that Defendant Voice Media Group, Inc. used an automatic telephone dialing system within the meaning of Telephone Consumer Protection Act, 47 U.S.C. § 227, and that his analysis of the documents in this case "corroborates" the claims of Plaintiff Christopher Legg are hereby **EXCLUDED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 2nd day of May, 2014.

*[signature]*
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF