UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-62044-CIV-COHN/SELTZER

CHRISTOPHER LEGG, on behalf of himself
and all others similarly situated,

Plaintiff,

v.

VOICE MEDIA GROUP, INC., a Colorado
corporation,

Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant's Motion for Summary

Judgment [DE 65] and Plaintiff's Motion for Summary Judgment [DE 67]. The Court has

reviewed the Motions, the parties' responses and replies thereto, and the record in this

case, and is otherwise advised in the premises. For the reasons discussed herein, the

Court will deny Defendant's Motion for Summary Judgment and will grant in part and

deny in part Plaintiff's Motion for Summary Judgment.

**I.   BACKGROUND**

This suit arises from a series of unwanted text messages Defendant Voice Media

Group, Inc. ("VMG") allegedly sent to Plaintiff Christopher Legg in violation of the

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. VMG operates alert

services which transmit text-message advertisements to consumers' cellular telephones

throughout the United States. DE 1 ¶¶ 6, 19, 32. VMG contracts with a third party,

Phaz2, Inc. ("Phaz2"), to handle the details and logistics of sending the text messages.

DE 65-1 ¶ 1; DE 65-3 at 1. Individuals wishing to subscribe to VMG's alert services send a text-message request to a "short code"—a type of telephone number used by companies to communicate with large numbers of consumers—maintained by Phaz2. DE 65-5 ¶ 5. Phaz2's systems then store the individuals' telephone numbers in a subscriber database. Id. The alert services also allow individuals to unsubscribe by sending the terms "STOP ALL" or variations of "STOP" to the short code. See DE 52-2 ¶ 9.

When VMG decides to send a message to its subscribers, VMG employees draft the substance of the message. DE 65-1 ¶ 4. The employees then input the message, the desired time of sending, and the intended categories of recipients into a software interface that communicates with Phaz2's systems. DE 65-2 ¶¶ 5–6. When Phaz2 receives the message, it arranges for the message to be transmitted to the cellular telephones of the designated subscribers at the appropriate time. See DE 65-1 ¶ 5.

Legg subscribed to VMG's alert services in 2012 and early 2013. DE 1 ¶¶ 20–25. In July 2013, however, Legg sought to unsubscribe by following VMG's instructions to send text messages containing variations of the terms "STOP" and "STOP ALL" to its short code. DE 1 ¶¶ 26–29. Nevertheless, VMG allegedly continued to send text messages to Legg. Id. ¶¶ 27–30. On the basis of the unwanted text messages, Legg commenced this action for violations of the TCPA on September 20, 2013. Id. ¶¶ 43–50.[1] Each party now moves for summary judgment in its favor.

---

[1] Legg commenced this suit as a class action, however the Court denied class certification on May 5, 2014. See DE 93.

## II.  LEGAL STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party bears the burden of proof on an issue at trial, it must show that the facts are such that "no reasonable jury could find for the nonmoving party." Rich v. Fla. Dep't of Corr., 716 F.3d 525, 530 (11th Cir. 2013) (internal quotation marks omitted).

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990). In deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

## III.  <u>DISCUSSION</u>

Legg brings his claims in this action under a provision of the TCPA which prohibits the use of an automatic telephone dialing system ("ATDS") to call a cellular telephone without the recipient's consent. The TCPA provides in pertinent part:

> It shall be unlawful for any person within the United States . . . to make any call . . . using any [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii). A text message to a cellular telephone qualifies as a "call" within the meaning of the TCPA. <u>Gager v. Dell Fin. Servs., LLC</u>, 727 F.3d 265, 269 n.2 (3d Cir. 2013). Legg thus alleges that VMG violated the TCPA when it sent him text messages after he expressed a desire to unsubscribe from its alert services.

The parties' Motions focus on two issues central to VMG's liability: (1) whether VMG's text messages were sent using an ATDS; and (2) whether VMG is liable for the text messages, even though the messages were sent using Phaz2's—not VMG's— systems. Legg also seeks judgment in his favor regarding VMG's affirmative defenses based upon the TCPA's established business relationship exemption, consent to receive the messages, and due process. Because factual questions remain regarding whether VMG used an ATDS or is liable for messages sent through Phaz2's systems, the Court will deny summary judgment on those core points. Nevertheless, the Court will grant Legg's Motion to the extent he seeks a determination regarding the merits of VMG's affirmative defenses. The Court will address each party's Motion in turn.

### A.  Legg's Motion for Summary Judgment [DE 67]

#### i.  Legg Has Failed to Establish that VMG's Text Messages Were Sent Using an ATDS

To succeed on his TCPA claims, Legg must establish that VMG's text messages were sent using an ATDS. The definition of an ATDS, however, is the subject of disagreement among the courts. Legg thus seeks a determination that the FCC's expansive view of what constitutes an ATDS should apply in this action, and that the systems used to send VMG's messages fall within that definition. VMG counters that the FCC's guidance on the definition of an ATDS is not applicable on the facts of this case, and moreover that Legg has provided no evidence that an ATDS was used. Although the Court will apply the FCC's interpretation of what qualifies as an ATDS, the Court finds that questions of fact remain regarding whether VMG actually used such a system.

The text of the TCPA defines an ATDS as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator[,] and . . . to dial such numbers." 47 U.S.C. § 227(a)(1). In 2003, however, the FCC expanded that definition when it addressed the question of "predictive dialers." See In re Rules & Regulations Implementing the TCPA, 18 FCC Rcd. 14014 (FCC 2003) ("2003 FCC Order"). Predictive dialers are automated systems that call telephone numbers stored in pre-programmed lists or databases in a manner designed to maximize the efficiency of call centers. Id. at 14091. The FCC determined that predictive dialers fall within the definition of an ATDS, even though they may not "store or produce telephone numbers to be called, using a random or sequential number generator," as set forth in the text of the TCPA. Id.

Reviewing the statutory text and legislative history of the TCPA, the FCC noted that Congress enacted the TCPA to deal with the increasing use of automated systems to place large volumes of calls. Id. at 14091–92. The FCC thus concluded that the defining characteristic of an ATDS is "the capacity to dial numbers without human intervention." Id. at 14092. The FCC further reasoned that the TCPA's definition of an ATDS as a system with the capacity to generate numbers to be called "randomly or sequentially" reflected the state of automatic dialing technology at the time of the TCPA's passage, but that this requirement had become an anachronism given that the "teleservices industry has progressed to the point where using lists of numbers is far more cost effective" than generating numbers. Id. at 14092. Though a predictive dialer might not fit squarely within the TCPA's statutory definition of an ATDS, the FCC found that it is the sort of automated equipment Congress intended to address through the TCPA because it has the "capacity to dial numbers without human intervention." Id. at 14092–93. Accordingly, the FCC determined that a predictive dialer is an ATDS. Id.

Legg suggests that the Court follow the guidance of the 2003 FCC Order to find that equipment can be an ATDS if it has the "capacity to dial numbers without human intervention," regardless of its capacity to store or produce telephone numbers using a random or sequential number generator. VMG disagrees, arguing that the 2003 FCC Order's conclusions are narrowly confined to situations involving predictive dialers, which are not implicated in this action. Subsequent to the 2003 FCC Order, however, numerous courts have drawn upon the Order for more than the narrow conclusion that a predictive dialer is an ATDS. Focusing on the FCC's reasoning that the defining characteristic of an ATDS is the "capacity to dial numbers without human intervention,"

these courts have found equipment to qualify as an ATDS if it can dial numbers automatically, for example by calling or sending text messages to numbers in a pre-programmed list, irrespective of the presence of a random or sequential number generator. See, e.g., Lardner v. Diversified Consultants, Inc., No. 13-22751, 2014 U.S. Dist. LEXIS 64205 at *15–16 (S.D. Fla. Apr. 30, 2014) (citing 2003 FCC Order to determine that "systems that automatically dial cell phone numbers from a preprogrammed list" fall within ATDS definition); Fields v. Mobile Messengers Am., Inc., No. 12-05160, 2013 U.S. Dist. LEXIS 180227 at *9–12 (N.D. Cal. Dec. 23, 2013) (citing 2003 FCC Order and finding that evidence of text messages sent without human intervention was sufficient to preclude summary judgment on whether ATDS was used); Hickey v. Voxernet LLC, 887 F. Supp. 2d 1125, 1129–30 (W.D. Wash. 2012) (citing 2003 FCC Order to find that plaintiff sufficiently pled use of ATDS where he alleged facts suggesting automated transmission of text messages)[2]; Rivas v. Receivables Performance Mgmt., LLC, No. 08-61312, 2009 U.S. Dist. LEXIS 129378 at *12–13 (S.D. Fla. Sept. 1, 2009) (plaintiff created issue of fact on use of ATDS precluding summary judgment where evidence suggested "computer device that dialed Plaintiff's number without human intervention"). But see Dominguez v. Yahoo!, Inc., No. 13-1887, 2014 U.S. Dist. LEXIS 36542 at *17–19 n.6 (E.D. Pa. Mar. 20, 2014) (rejecting FCC guidance and finding that definition of ATDS "require[s] more than simply that the system store

---

[2] The Court observes that some decisions relying upon the 2003 FCC Order, such as Hickey, have used the phrase "predictive dialer" as something of a term of art referring to any device with the capacity to dial numbers from a database without human intervention. See 887 F. Supp. 2d at 1129–30 (noting that text-messaging equipment might qualify as "predictive dialer" if capable of dialing from database of numbers). In its Order, however, the FCC classified predictive dialers more narrowly as "equipment that dials numbers and . . . assists telemarketers in predicting when a sales agent will be available to take the calls." 18 FCC Rcd. at 14091.

telephone numbers and send messages to those numbers without human intervention").

This Court likewise views the 2003 FCC Order as applying beyond the narrow

circumstances of predictive dialers. In that Order, the FCC clearly expressed that an

ATDS is defined by "the capacity to dial numbers without human intervention," for

example by calling numbers stored in a database. 18 FCC Rcd. at 14091–93. Though a

predictive dialer may qualify as an ATDS under those criteria, the FCC's reasoning is

relevant beyond the narrow circumstances of predictive dialers.[3]

Having determined that the FCC's interpretation of an ATDS applies in this

action, the Court nevertheless finds that Legg has failed to establish that VMG used

such a system. The record does contain substantial evidence that VMG operates its

alert services using automated means. VMG creates the content of text-message

"scheduled broadcasts," which it submits to Phaz2's systems through a software

interface. DE 65-2 ¶¶ 5–6. Phaz2 then sends these broadcasts to subscribers whose

telephone numbers it stores in its databases. DE 65-2 ¶ 3. Draft documentation relating

to Phaz2's systems suggests that Phaz2 sends the broadcasts by automated means.

---

[3] In VMG's Motion for Summary Judgment, VMG also argues that the Court should reject the FCC's determinations in the 2003 FCC Order as unreasonable even if they apply to the facts of this case. DE 65 at 8–9. There is substantial disagreement regarding the deference federal district courts owe the FCC's orders interpreting the TCPA. See Lardner, 2014 U.S. Dist. LEXIS 64205 at *13–16 (according Chevron deference to 2003 FCC Order and finding FCC's definition of ATDS reasonable); Murphy v. DCI Biologicals Orlando, LLC, No. 12-1459, 2013 U.S. Dist. LEXIS 181732 at *23–31 (M.D. Fla. Dec. 31, 2013) (finding that Hobbs Act, 47 U.S.C. § 402, deprives district courts of jurisdiction to review merit of FCC regulations relating to TCPA). Indeed, the Eleventh Circuit has recently granted a petition for interlocutory review implicating this very issue. See generally Gulf Coast Collection Bureau, Inc. v. Mais, No. 13-14008 (11th Cir.). Regardless of whether the Hobbs Act precludes review of the 2003 FCC Order or Chevron deference applies, the Court joins those other district courts which have found the 2003 FCC Order reasonable and persuasive in defining an ATDS.

See DE 86. The parties have also provided examples of VMG's text messages which refer to the messages as "autodialed." See DE 75-2 at 4.

However, this evidence does not paint a complete picture of the process VMG and Phaz2 use to send the messages. Although Legg points to documents purportedly describing Phaz2's systems, he has not provided evidence linking those systems to messages sent on VMG's behalf. For example, the record is devoid of testimony by a representative of Phaz2 confirming that the documents Legg relies upon accurately reflect the capabilities of its systems, or that it even used those systems in delivering VMG's messages. Further, though it is true that Phaz2 sends "scheduled broadcasts" to individuals in a subscriber database, Legg has not shown that these broadcasts are transmitted without human intervention. It may be possible, if improbable, that Phaz2 employed individuals to transmit each broadcast at the predetermined time. Similarly, a reference to VMG's messages as "autodialed" is not dispositive of whether the messages were sent using an ATDS within the meaning of the TCPA, and without human intervention. Viewing Legg's evidence as a whole, the Court is unable to find that "no reasonable jury could find for [VMG]" regarding the use of an ATDS. See Rich, 716 F.3d at 530. Accordingly, Legg has failed to demonstrate his entitlement to a determination at the summary-judgment stage that the system used to send VMG's messages was an ATDS.[4]

---

[4] The Court notes that it has excluded the testimony of Legg's expert, Randall Snyder, on this point, and will not consider his opinions or testimony in arriving at its conclusions with regard to the parties' Motions for Summary Judgment. See DE 91 at 8–11.

### ii.   Legg Has Failed to Establish that VMG
###        Is Liable for Calls Phaz2 Placed

Legg next seeks a determination that VMG is liable for unwanted text messages

Phaz2 sent on VMG's behalf. VMG does not dispute that agency principles may result in

an advertiser's liability under the TCPA for actions taken on its behalf by a vendor.

DE 75 at 9. Instead, VMG argues that Legg failed to plead such vicarious liability in his

Complaint, and cannot raise this theory of liability for the first time at the summary-

judgment stage. The Court determines that Legg raised vicarious liability in his

Complaint and may proceed on the theory that VMG is liable for Phaz2's actions,

however Legg has failed to establish vicarious liability for summary-judgment purposes.

First, the Court rejects VMG's argument that Legg's failure to raise vicarious

liability in his Complaint precludes him from proceeding on a vicarious-liability theory

now. Contrary to VMG's assertions, Legg did give notice in his Complaint that he held

VMG responsible for messages sent by its agents. Specifically, Legg defined his

proposed class as comprising individuals who were sent unwanted text messages by

VMG "or any party on behalf of [VMG]." DE 1 ¶ 34. The Court therefore finds that Legg

gave VMG notice that he asserts vicarious liability in his initial pleading. See Imhoff Inv.,

LLC v. SamMichaels, Inc., No. 10-10996, 2014 U.S. Dist. LEXIS 4965 at *12–13 (E.D.

Mich. Jan. 15, 2014) (rejecting contention that vicarious liability was first raised at

summary-judgment stage where plaintiff defined class as including recipients of calls

made "on behalf of" defendant). Moreover, the record teems with references by both

parties to Phaz2's relevance to the action and VMG's reliance upon Phaz2 to operate its

alert services. VMG cannot credibly argue that it has suffered unfair surprise or

prejudice as a result of Legg's assertion that messages from Phaz2 form the basis for VMG's liability.

Having determined that Legg may proceed on a theory of vicarious liability, the Court nevertheless concludes that Legg has not established that VMG is vicariously liable for TCPA violations arising from messages sent by Phaz2. A court determining the existence of vicarious liability must first assess whether the principal had the necessary agency relationship with the direct wrongdoer to support such liability. See CFTC v. Gibraltar Monetary Corp., 575 F.3d 1180, 1189 (11th Cir. 2009) (per curiam). A court may find a sufficient agency relationship where the principal exercised substantial control over the agent's actions. Id. A principal's ratification of the agent's conduct, or representations that the agent acts with authority, may also create an agency relationship supporting vicarious liability. In re Dish Network, LLC, 28 FCC Rcd. 6574, 6586–87 (FCC 2013). The existence of this agency relationship is a question of fact, however, and summary judgment on vicarious liability is appropriate only in cases where evidence of the relationship is clear and unequivocal. Johnson v. Unique Vacations, Inc., 498 F. App'x 892, 894 n.3 (11th Cir. 2012) (per curiam).

Here, Legg has provided evidence that VMG and Phaz2 enjoyed a business relationship whereby VMG sent messages to Phaz2, and Phaz2 transmitted those messages to VMG's subscribers. See DE 67 at 11–12. This evidence, however— comprising a handful of e-mails, technical documents, and a contract—gives only a vague sense of the actual working relationship of the parties, and the allocation of duties and control. Further, the contract establishing the relationship between VMG and Phaz2 does not appear to provide VMG with substantial control over the details of

Phaz2's provision of text-messaging services. <u>See</u> DE 65-3 at 1. The contract also states that "Phaz2 is acting as an independent contractor" in the performance of its duties, and that "nothing [in the contract] shall be deemed to create an agency relationship between Phaz2 and [VMG]." <u>Id.</u> at 5. While this contractual language is not dispositive of whether VMG in fact had sufficient control over Phaz2's actions to render VMG vicariously liable, <u>see</u> Restatement (Third) of Agency § 1.02 (2006), at a minimum it raises an issue of fact sufficient to preclude summary judgment in Legg's favor. Nor has Legg shown that VMG knew that its subscribers were receiving unwanted text messages from Phaz2 and ratified that conduct, or that VMG made representations sufficient to create liability under a theory of apparent authority. Accordingly, questions of fact remain regarding the relationship between VMG and Phaz2, and Legg is not entitled to summary judgment that VMG is vicariously liable for Phaz2's actions. <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 323.

### iii.  Legg Is Entitled to Summary Judgment on Certain of VMG's Affirmative Defenses

In his Motion, Legg also requests a determination that VMG's affirmative defenses based upon the TCPA's established business relationship exemption, consent, and due process are without merit, which VMG does not oppose. The Court will grant Legg's Motion with respect to each of these defenses both because Legg appears correct as a legal matter, and because VMG's failure to respond constitutes grounds for resolution of these points in Legg's favor. <u>See</u> S.D. Fla. L.R. 7.1(c); <u>A1 Procurement, LLC v. Hendry Corp.</u>, No. 11-23581, 2012 U.S. Dist. LEXIS 176624 at *8–9 (S.D. Fla. Dec. 12, 2012).

Legg first argues that the established business relationship exemption to the TCPA, which VMG raises as an affirmative defense (DE 44 at 7), applies only to calls made to land lines, and not to claims such as his for calls made to cellular telephones. DE 67 at 4–5 (citing Himes v. Client Servs. Inc., No. 12-321, 2014 U.S. Dist. LEXIS 125 (D.N.H. Jan. 2, 2014)). The Court agrees with Legg that the established business relationship exemption does not apply to Legg's claims under 47 U.S.C. § 227(b)(1)(A)(iii) for calls to his cellular telephone, and instead applies only to calls to land lines. See Gager, 727 F.3d at 273.

Legg also argues that VMG's consent defense fails as a legal matter, because he premises his claims on text messages VMG sent after he revoked his consent. Section 227(b)(1)(A)(iii) only prohibits calls made without the recipient's "prior express consent." A recipient may revoke prior consent, however, and subsequent calls can support a TCPA claim. See Osorio v. State Farm Bank, F.S.B., __ F.3d __, 2014 U.S. App. LEXIS 5709 at *28–31 (11th Cir. Mar. 28, 2014). A party may revoke consent to receive text messages by sending an "opt-out" text message to the calling party. Munro v. King Broad Co., No. 13-1308, 2013 U.S. Dist. LEXIS 168308 at *7–11 (W.D. Wash. Nov. 26, 2013); see also In re SoundBite Commc'ns, Inc., 27 FCC Rcd. 15391, 15394–98 (FCC 2012) (consumer consent to receive text messages after sending opt-out request is limited to message confirming that opt-out was effective). Here, Legg sent an opt-out message to VMG, requesting to stop receiving messages from VMG according to the procedures set forth in VMG's own messages. E.g., DE 67-9 ¶ 12. Because VMG does not contest that Legg properly attempted to unsubscribe from its alert services, and does not dispute that this was effective to revoke consent, Legg is entitled to a

determination that messages he received subsequent to his requests to unsubscribe were sent without his consent.

Finally, Legg requests a determination that the damages he seeks pursuant to the TCPA do not violate due process. This request appears to relate to VMG's vaguely pled seventh affirmative defense, which states in its entirety: "To the extent Plaintiff's claims seek to recover money damages, they are barred because the damages/penalty provision of the TCPA violates due process." DE 44 at 7. VMG does not specify precisely how or why the TCPA's damages provisions violate due process. To the extent VMG premises its argument of unconstitutionality upon the potentially large statutory damages arising from the certification of this action as a class action, the issue is moot, as the Court has denied class certification in this case. See DE 93. As to the statutory penalties for TCPA violations in suits by individual plaintiffs, numerous courts have found the TCPA's damages provisions facially constitutional. See Pasco v. Protus IP Solutions, Inc., 826 F. Supp. 2d 825, 834–35 (D. Md. 2011) (collecting cases). Further, any challenge to the constitutionality of the TCPA's damages provisions as applied to VMG is premature, as the issue of liability has not been determined and no damages have yet been awarded. Noting once more that VMG does not contest Legg's argument on this point, the Court finds that Legg is entitled to a determination that VMG's due process defense does not pose an obstacle to his claims under the TCPA.[5]

---

[5] The Court's ruling on VMG's due process defense is without prejudice to arguments by VMG as to the constitutionality of any eventual damages award. See Pasco, 826 F. Supp. 2d at 835 (reserving issue of constitutionality of TCPA damages where liability had not been resolved); Centerline Equip. Corp. v. Banner Pers. Serv., Inc., 545 F. Supp. 2d 768, 778 (N.D. Ill. 2008) (same).

**B. VMG's Motion for Summary Judgment [DE 65]**

    **i.   VMG Has Failed to Establish that It Is
Not Vicariously Liable for Phaz2's Actions**

VMG argues that it is entitled to summary judgment on Legg's claims because VMG itself never sent text messages directly to its consumers. Instead, VMG contends that it submitted the content of the messages to Phaz2, and Phaz2 sent the messages. VMG further maintains that it cannot be held vicariously liable for Phaz2's actions. However, Legg has created an issue of fact regarding whether VMG is vicariously liable for Phaz2's conduct, thus summary judgment on this point is inappropriate.

Without disputing that vicarious liability may support a TCPA claim, VMG first contends that Legg cannot proceed on a theory of vicarious liability at the summary-judgment stage because he failed to give notice of the theory in his Complaint. Id. at 1–2. As the Court has already determined in relation to Legg's Motion for Summary Judgment, however, Legg did raise vicarious liability in his Complaint. See supra part III.A.ii. VMG therefore is not entitled to summary judgment arising from Legg's assertion of vicarious liability for the first time at the summary-judgment stage.

VMG also argues that Legg has provided insufficient evidence of an agency relationship to support vicarious liability. VMG contends that Legg can cite only to the contract between VMG and Phaz2 to illustrate the relationship between the two companies, and that the contract makes clear that Phaz2 is an independent contractor providing services to VMG. DE 82 at 3. VMG concludes that a principal is not vicariously liable for the actions of an independent contractor, thus any action taken by Phaz2 cannot support VMG's liability.

As the Court has already determined, however, the language of VMG's contract with Phaz2 is not dispositive of the issue of vicarious liability. A review of the other evidence in the record shows that VMG's relationship with Phaz2 exists primarily for the purpose of conducting advertising via text messages to consumers, and that VMG exerts substantial control over Phaz2's transmission of those text messages. Specifically, VMG dictates the content, timing, and recipients of the messages that Phaz2 sends on its behalf. See DE 65-2 ¶¶ 5–6. Moreover, the VMG-Phaz2 contract provides VMG with the option to terminate the relationship in the event that Phaz2 does not meet VMG's reasonable expectations. DE 65-3 at 5. In short, VMG directs many material aspects of Phaz2's transmission of its text messages, and has the right to terminate their contract if dissatisfied with Phaz2's performance. These indicia of control are sufficient to create an issue of fact regarding whether an agency relationship capable of supporting vicarious liability exists between the two companies. See Platypus Wear, Inc. v. Clarke Modet & Co., S.L., No. 06-20976, 2008 U.S. Dist. LEXIS 107078 at *10–16 (S.D. Fla. June 23, 2008) (denying summary judgment on vicarious liability where record was insufficiently developed regarding relationship of alleged wrongdoers, but contained indicia of control), adopted in relevant part, 2008 U.S. Dist. LEXIS 54132 (S.D. Fla. July 15, 2008). Accordingly, the Court will deny VMG's Motion to the extent it seeks summary judgment on the issue of vicarious liability.

### ii.   VMG Has Failed to Establish that It Is Not Directly Liable for Sending the Text Messages

VMG also contends that, because all of the text messages sent to its subscribers were routed through Phaz2's equipment, the Court should grant summary judgment on the issue of whether VMG is liable for having itself used an ATDS to send the

messages. The Court rejects VMG's argument because the parties' evidence does not paint a full picture of the process by which VMG's messages ultimately find their way to consumers. VMG uses a software interface to transmit its text-message broadcast instructions to Phaz2's systems. See DE 65-1 ¶ 4. What happens next, however, is something of a mystery. VMG implies that Phaz2 has some role in processing and manipulating the text messages once VMG's involvement has concluded, presumably resulting in Phaz2, and not VMG, using its equipment to send the text messages. See DE 65-1 ¶¶ 5–6; DE 65-2 ¶¶ 4, 7. If the interface VMG uses is sufficiently integrated with Phaz2's systems, however—for example, so that VMG's submission of a scheduled broadcast automatically triggers the transmission of messages from Phaz2's equipment—it may be that VMG is the entity actually "using" the systems to place calls to subscribers, notwithstanding that Phaz2 may own the software or equipment that executes VMG's instructions. See Lardner, 2014 U.S. Dist. LEXIS 64205 at *17–19 (finding defendant liable under TCPA for calls made using third-party ATDS where defendant's employees operated ATDS through software interface). Accordingly, VMG has not shown that it is entitled to summary judgment on the issue of whether it is liable for itself using an ATDS to send its text messages.[6]

### iii.   VMG Has Failed to Establish the Absence of an ATDS

Finally, VMG argues that Legg's claims fail because the record is devoid of evidence that VMG's text messages were sent using an ATDS. The record reflects,

---

[6] VMG contends in its Reply that Legg has abandoned any argument that VMG itself used an ATDS to make calls, because Legg did not address the issue in his Response to VMG's Motion. DE 82 at 4–5. VMG's contention is meritless because Legg did address this issue in his Response, arguing that VMG itself uses Phaz2's software to send its text messages. DE 74 at 9–11.

however, that Phaz2 sent VMG's messages to subscribers in "scheduled broadcasts." DE 65-2 ¶¶ 5–6. The broadcasts were sent to telephone numbers stored in a database of VMG's subscribers. DE 65-5 ¶ 5. The documentation relating to Phaz2's systems suggests that they were capable of sending the broadcasts automatically (see DE 86), and indeed VMG and Phaz2 referred to certain of the text messages as "autodialed" (e.g., DE 75-2). Drawing all inferences in Legg's favor, a reasonable juror could find that VMG's messages were sent using an automated, computerized system with the capacity to transmit the messages without human intervention—in other words, an ATDS. See Rivas, 2009 U.S. Dist. LEXIS 129378 at *12–13. The Court thus will deny VMG's request for summary judgment regarding the involvement of an ATDS in sending its text messages.[7]

## IV.  CONCLUSION

Having reviewed the parties' crossing Motions for Summary Judgment, the Court determines that factual issues preclude summary judgment on the two core issues of the parties' papers: (1) whether an ATDS was used to send VMG's text messages; and (2) whether VMG is liable for text messages sent via Phaz2's systems. Nevertheless, Legg has also sought summary judgment on the merits of VMG's established business relationship, consent, and due process defenses, to which VMG has failed to respond. Accordingly, the Court will grant summary judgment in Legg's favor only on those defenses. It is thereupon

---

[7] In his Opposition to VMG's Motion, Legg seeks to exclude the testimony of two of VMG's witnesses, Stacy Volhein and Sandra Holmes, as it relates to the capabilities of VMG's and Phaz2's systems and whether the systems fall within the definition of an ATDS. DE 74 at 6 & n.8. Even taking account of these witnesses' testimony, however, the Court finds that VMG has not demonstrated its entitlement to summary judgment on the issue of whether an ATDS was used.

**ORDERED AND ADJUDGED** as follows:

1.   Defendant's Motion for Summary Judgment [DE 65] is **DENIED**.

2.   Plaintiff's Motion for Summary Judgment [DE 67] is **GRANTED in part** and

**DENIED in part**. The Motion is **GRANTED** to the extent it seeks an adjudication

in Legg's favor on VMG's affirmative defenses based upon the established

business relationship exemption to TCPA liability, prior express consent, and due

process concerns. The Motion is **DENIED** in all other respects.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 16th day of May, 2014.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF